THOMAS R. NEWELL *vs.* DAVID L. HOW.                    31    235

85    212

November 24, 1883.

**Libel—Words not Actionable per se—Requisites of Complaint.**—In an action for libel, when the language of the publication is not actionable *per se,* but requires explanation by some extrinsic matter to make it actionable, the complaint must allege such extrinsic matter which, coupled with the language published, affects its construction, and shows that it conveyed the actionable meaning which plaintiff claims for it.

**Same—Words imputing to Merchant Want of Credit, etc.**—In those trades or professions in which, ordinarily, credit is essential to their successful prosecution,—as, for example, that of merchant,—language is actionable *per se* which imputes to one in such trade or profession a want of credit or responsibility, or insolvency, past, present, or future. Such language necessarily, or naturally and presumptively, causes pecuniary loss to the person of whom it is published.

Action for libel, brought in the district court for Scott county, the complaint containing thirteen counts, each charging a distinct libel. The defendant demurred to each count, as failing to state a cause of action. The demurrer was sustained by *Macdonald*, J., as to the 2d, 4th and 13th causes of action, and overruled as to the others, and the plaintiff appealed.

*Brown & Hawkins* and *H. J. Peck*, for appellant.

*C. K. Davis* and *E. Southworth*, for respondent.

MITCHELL, J.   In an action for libel, when the language published is not actionable *per se*, but requires explanation by some extrinsic matter to make it actionable, the complaint must allege such extrinsic matter which, coupled with the language published, affects its construction and shows that it conveys the actionable meaning which plaintiff claims for it.   Townshend on Slander & Libel, § 308.   The publications in this case, which constitute the alleged libels, were regarding the plaintiff in the special capacity of a merchant, and in reference to his financial standing and credit as such.   In those trades or professions in which, ordinarily, credit is essential to their successful prosecution, language is actionable *per se* which imputes to one in such trade or profession a want of credit or responsibility, or insolvency, past, present, or future.   Such language necessarily, or naturally and presumptively, causes pecuniary loss to the person of whom it was published.   Id. § 191.

The allegations of plaintiff's second cause of action are that the defendant wrote and transmitted to a firm to whom plaintiff was indebted the following letter, of and concerning the plaintiff, to wit : "For the purpose of giving a proper and correct standing upon our financial register of our merchants, we would ask you, in confidence, if you are selling Thomas R. Newell, (meaning plaintiff,) of this city, and to what extent he is indebted to you.   Your reply will be confidential, and his assets or estimated liabilities, as reported, will be sent you."   There is nothing in this necessarily or naturally imputing to plaintiff insolvency or financial embarrassment.   It is a mere letter of inquiry for certain facts.   The fact that it was made in confidence, and that a promise was made that the reply would be confidential, does not, on its face, imply that plaintiff's credit or standing

was not good. This confidence might have been exacted and promised for reasons entirely disconnected from plaintiff's financial ability. Hence, standing alone and unaccompanied by allegations of any extrinsic facts or circumstances affecting its construction, this letter contains nothing that is actionable. The allegations that the contents of this letter were false, and that defendant knew it, and wrote it with malicious intent to injure plaintiff, do not aid the pleading in this regard. These are not allegations of any extrinsic facts or circumstances affecting the construction of the words, or showing that they conveyed a defamatory meaning.

2. The fourth cause of action is that the defendant wrote and transmitted to this same firm, with whom plaintiff, a merchant, was then dealing, and to whom he was then indebted, another letter, of and concerning plaintiff, in words and figures following: "*Gents:* We have delayed answering your letter for the purpose of collating the amount of T. R. Newell's (meaning plaintiff) indebtedness, and to ascertain the amount of his assets. We are now able to report, not fully, but nearly so, regarding his financial ability. His assets, consisting of merchandise, show-cases, tools, book-accounts, as per his own guess, is about $1,800. His indebtedness is, as far as I know, about the same amount. He may owe more; I speak of what I know. $1,300 is to merchants like you, and $500 a demand note. If any one of his creditors should crowd him, the demand would be pushed. We would advise a caution on your part in selling, and a prompt payment of matured indebtedness."

The complaint, after setting out several other alleged libels as separate and distinct causes of action, then, in conclusion, alleges generally that the contents of each and all of these letters were false, and that defendant knew it, and that he wrote them through ill-will and malice, with intent to injure the good name, fame, and credit of plaintiff. Published in reference to a person in the special character of a merchant, we think this language is actionable *per se.* On its face it necessarily and clearly imputes to plaintiff, if not actual insolvency, at least financial embarrassment and doubtful credit. Such statements would necessarily impair the credit of any merchant. It is suggested that this communication is on its face privileged. It is

sufficient answer to this that the complaint alleges express malice. Defendant, however, invokes the familiar rule of pleading that where a complaint contains several causes of action, each must be stated separately, and each statement must be complete in itself, or must be made so by express reference to other parts of the pleading, and that facts stated in one cause of action will not help the statements of a second, except so far as the statement of them is referred to in, and made by such reference a part of, the statement of the facts in the second. This is doubtless the rule. But in this case the allegations referred to are by their express terms made applicable to *each and all* of the causes of action. If the pleading is objectionable on the ground that the different causes of action are not separately stated, it could be taken advantage of only by motion, and not by demurrer.

3. The thirteenth cause of action is that defendant wrote and transmitted to the same firm, with whom plaintiff was then dealing, and to whom he was then indebted, another letter, of and concerning plaintiff, in words and figures following: "My being away from home was the cause of delay in remitting for the Newell (meaning plaintiff) account and notes when I remitted the $270. It was intended to release you entirely, and I supposed my letter stated so; but if you feel inclined to believe outside statements, return me my $270, and you shall have your notes by return mail, which I am holding to-day. I want to hear and close this matter without any delay; but if you desire to keep the money and call it closed by your being released, do so or return my money." There is not a single assertion in this letter that on its face is derogatory to the plaintiff. There is no reference to any extrinsic fact or circumstance that would make its language convey an actionable meaning.

Our conclusion is that the demurrers to the second and thirteenth causes of action were properly sustained, but that the court erred in sustaining the demurrer to the fourth. That part of the order appealed from which sustains the demurrer to the second and thirteenth causes of action is therefore sustained, but that part which sustains the demurrer to the fourth cause of action is reversed.

Ordered accordingly.