(25 App. Div. 397.)

WHITE v. NEWCOMB.

(Supreme Court, Appellate Division, Fourth Department. February 6, 1898.)

1. SLANDER—EVIDENCE—CONVERSATION BETWEEN THIRD PARTIES.

Evidence of a certain conversation between third parties was incompetent, in an action for slander, as raising an issue not in the case, where the fact that such conversation had occurred was called out by plaintiff, on the cross-examination of defendant.

2. SAME—TRANSACTIONS WITH THIRD PARTY.

Where certain witnesses had testified, in an action for slander, that defendant, when they called on him for information respecting plaintiff's reputation, referred them to a certain other person, it was error to permit plaintiff to testify to transactions between herself and such person tending to show that he was hostile to her, as such evidence was utterly immaterial.

3. SAME—DAMAGES—COLLUSION.

Where plaintiff induced defendant, by means of detectives, under pretense of protection to their own interests, to make the alleged slanderous statements set up as her cause of action, she was entitled to no damages therefor.

4. SAME—EXCESSIVE VERDICT.

A verdict for $2,500 damages for slander was excessive where the evidence was conflicting, and that for plaintiff consisted of the testimony of an employé, who had previously been employed by defendant, but had trouble with him, and left his service.

Ward, J., dissenting.

Appeal from trial term, Monroe county.

Action by Ida L. White against Thomas W. Newcomb. From a judgment for plaintiff, and an order denying a motion for new trial, defendant appeals. Reversed.

Argued before HARDIN, P. J., and FOLLETT, ADAMS, GREEN, and WARD, JJ.

Fanning & Williams, for appellant.
George Raines, for respondent.

FOLLETT, J. This action was begun January 4, 1896, to recover damages for an alleged slander uttered on two occasions (September 1, 1895, and December 18, 1895), imputing unchastity to the plaintiff. The complaint contains two counts. In the first it is alleged that the slander was uttered December 18, 1895, and in the second it is alleged that the slander was also uttered September 1, 1895. I concur in the opinion of the Presiding Justice that Stafford v. Association, 142 N. Y. 598, 37 N. E. 625, sustains the ruling of the trial court permitting the plaintiff to give evidence, as part of her case, that by the speech of people her reputation was good. However, I think two errors were committed which require a reversal of the judgment and order.

Henry R. Cash was called as a witness for the plaintiff, and testified:

"I never told Walker, of 38 Caroline street, that Miss White [plaintiff] had been, * * * or you had seen or known of her being, in a family way. Q. About seeing Miss White and Kennedy kissing each other? (Objected as in-

competent, immaterial, and not proper rebuttal.    Overruled, and exception.)    A.
No, sir."

The only excuse for receiving this evidence arose out of the cross-
examination of the defendant.    He testified:

"I went to a young man by the name of Walker living on Caroline street.
*   *   *"

The conversation between the defendant and Walker was then de-
tailed by the defendant upon his cross-examination.    In describing
this conversation he testified:

"I says, 'You [Walker] stated to me once certain things in connection with
Miss White and Mr. Kennedy.'  I says, 'Was that so?'  'Well,' he says, 'it
wasn't exactly so.'   He says, 'A gentleman by the name of Cash said he saw
certain things.'   At this time I was trying to get evidence, and he denied that
he knew personally certain things that I was asking him.   I was trying to
get Cash.    That Kennedy had been seen kissing Miss White in the office.   He
said he had not seen it, but Cash had."

This conversation occurred after this action was begun, and while
the defendant was searching for evidence.    No reference to this
transaction was made by the defendant on his direct examination.
The conversation was new matter, called out by the plaintiff on the
cross-examination of the defendant.    It was incompetent to permit
Cash to testify whether he had or had not told Walker anything
about seeing Miss White and Kennedy kissing each other.    It was
a conversation wholly between third parties, and, as before stated,
no evidence had been given of any such conversation except as it
was called out by the plaintiff on the cross-examination of the de-
fendant.    It raised an issue not in the case, and which was likely to
prejudice the jury in such an action.

On one occasion, Frank Graham, accompanied by two women,
called on defendant at his residence, and inquired about the reputa-
tion of the plaintiff.    He was a witness in behalf of the plaintiff,
and testified that defendant said in that interview that the plaintiff
was unchaste.    The defendant, in his testimony, detailed the conver-
sation had with Graham and his companions, and said that he
finally said to them, "If you want to know more about it, inquire of
John Burkhard, next door to Kennedy."    On another occasion one
Albert G. Mack called on the defendant, and inquired about the rep-
utation of this plaintiff.    He was also sworn as a witness for the
plaintiff, and testified that the defendant told him that it was re-
puted that the plaintiff was unchaste.    The defendant, on his direct
examination, described the interview, and testified that he told
Mack, "if he wanted further information, that he could go to John
Burkhard, who lived next door to them."    Burkhard was not sworn
as a witness.    The plaintiff was called in rebuttal, and testified, over
the defendant's objection and exception, that there was trouble at
one time between Henry R. Kennedy and John Burkhard.    "Mr.
Raines [plaintiff's attorney] proposed to show the relations between
Burkhard and this lady, and the facts upon which it is claimed by
the plaintiff he was bitterly hostile to this lady [the plaintiff]."
This was objected to by the defendant as incompetent, immaterial,
and not in rebuttal.    The objection was overruled, and an exception

was taken. The plaintiff then continued her testimony, covering more than a page, describing a transaction tending to show that Burkhard was hostile to her, and was permitted to testify to a conversation which occurred between herself and Burkhard, all of which was over the defendant's objection. This evidence was utterly immaterial, and was calculated to prejudice the defendant. For these errors, the judgment and order should be reversed.

Again, the plaintiff's case has a most suspicious aspect. As before stated, but two utterances of the alleged slanderous words are set forth in the complaint. To establish the first cause of action, she called Albert G. Mack, who testified that he had done detective work, and also that in the latter part of November or the first part of December, 1895, he called on the defendant in the evening, at his residence. Previous to that interview defendant and Mack were strangers. Mack testified that he stated to the defendant that he called for the purpose of inquiring what there was about the shoe business in which the defendant was engaged; that witness' wife had some money, and thought of going in business with the plaintiff, who was then engaged in the shoe business in a small way. He testified that he inquired in respect to the character of the plaintiff, and that the defendant said that she was not a proper person for a lady to associate with; that she had been with child, and had got rid of it. The witness further testified that he knew the plaintiff, and knew Henry R. Kennedy. He testified that he did not visit the defendant at the suggestion of the plaintiff, her counsel, or Henry R. Kennedy; but he testified that he did visit John Burkhard at the suggestion of the plaintiff's counsel, who gave him two or three questions to ask Burkhard about this case, and that he went with a view of being a witness in this case; that after he had interviewed Burkhard, and asked the questions which the plaintiff's attorney told him to ask, he reported the result to him. It is unnecessary to recite the description which this witness gives of his conduct in this case, but I think it cannot be read without coming to the conclusion that he was employed as a detective to search for evidence for the plaintiff, and that he went to the defendant under the guise of desiring to know for his personal interest in respect to the character of this plaintiff, and that he was successful in his deceitful attempt to secure evidence.

Again, Frank Graham, a witness called by the plaintiff, testified that in December, 1895, he called on the defendant at his residence; that with him were two women, a Mrs. Green, who he will not testify was not introduced to defendant as Miss Brown, and the other a Miss Graham, whom he introduced as his cousin. This witness testified that he and the defendant were strangers. He testified that he told the defendant that his cousin was thinking of investing money in the plaintiff's business, and that he asked the defendant in respect to her business ability and general honesty. The defendant asked him his reasons for inquiring, and he told him that his cousin was desirous of investing a certain amount in business with Miss White. He testified that the defendant told him that she was not honest; that she had stolen, purloined, or used his patterns;

and that it had been reported that she at one time had left town to get rid of a child, the father of which was supposed to be Henry R. Kennedy. He also testified that Mrs. Green, who was with him, was a hairdresser in the city, whom he had known some time; but he would not state that she was not introduced on the occasion of that interview as Miss Brown. Neither Mrs. Green (alias Miss Brown) nor the woman who was introduced as Miss Graham was called as a witness. He further testified that Mr. Kennedy sent him there, and that Kennedy told him where Newcomb lived. I think no one can read the testimony of this witness without being convinced that he and his companions were detectives, acting in the interest of the plaintiff. In case Mack and Graham were acting as detectives in the interest of the plaintiff, for the purpose of inducing the defendant to make statements derogatory to the plaintiff's character, and he was induced to do it by the false representations of the detectives that they sought the information for the protection of their own interests, the plaintiff, being bound by the acts of her agents, cannot recover damages for the words which she induced, through her detectives, the defendant to utter. In addition to this, William H. Lew, a witness called by the defendant, testified that the plaintiff asked him to go to the defendant, and get him to say something which she could use as evidence in the case they were about to bring against him for defamation of character, and that he declined to do so. Afterwards the plaintiff was recalled, and admitted that she did ask Mr. Lew to see the defendant, and find out exactly what he was saying about her.

The court, in instructing the jury, stated correctly that if they found that the plaintiff, by means of detectives, induced the defendant to make the statements under false pretenses, they might render a verdict on the first count for the defendant; but the jury rendered a verdict for $2,500 damages, which must have been the result of prejudice, or of some other motive, not justified by the evidence. The evidence to sustain the second count was given by Mrs. Agnes Wallace, who, at the time of this trial, was an employé of the plaintiff. This witness had formerly been employed by the defendant in manufacturing shoes, and was there at the same time that the plaintiff was employed by him as a bookkeeper. She testified that the defendant said to her in September, 1895, that the plaintiff had got rid of an illegitimate child. This witness and the defendant had had trouble, as she testified, and she left his service, though not discharged, and, after leaving, she worked more or less for the plaintiff. The defendant denied that he made any such statement to this witness. Upon this testimony, the jury rendered a verdict for $2,500 damages, which, under all the testimony in the case, if any cause of action exists, is altogether excessive.

For the errors referred to, and because the verdict is for excessive damages, the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event.

ADAMS, J., concurs in the opinion.

(February 5, 1898.)

HARDIN, P. J. (concurring). There was a conflict in the evidence as to the alleged utterances by the defendant. As a witness he made several denials of statements made by the witnesses for the plaintiff. Several rulings were made during the progress of the trial, some of which are complained of by the defendant, to which no exceptions were taken.

At page 51 the following question was propounded to the witness Clara M. Copeland:

"Q. I will ask you what her reputation was, from the speech of people, in regard to morality and chastity,—good or bad."

This question was objected to as immaterial and incompetent, and was overruled, and an exception taken.

When Dr. Rutherford was on the stand, similar evidence was taken from him, and he was allowed to answer:

"I am acquainted with her general reputation. Know people she is acquainted with, and her general moral character. Her reputation for chastity and propriety of conduct has been good."

There was no objection taken to this evidence. Probably it was received without objection after the preceding question at folio 203 had been passed upon by the court.

In Pratt v. Andrews, 4 N. Y. 493, it was held:

"A party to a civil suit can only give evidence of the good character of himself, his wife, servant, or witness, in answer to impeaching evidence on the other side. Also, held, in an action for crim. con. that the plaintiff could not give evidence of the good character of the wife previous to the adultery. there being no evidence on the other side impeaching her previous general character, or her conduct with any other person than the defendant himself. When, in such an action, the wife's character for chastity has been attacked, either by the testimony of witnesses on the part of the defendant, or by the course of cross-examining the plaintiff's witnesses, evidence in support of her character will be received. But quære, whether such evidence is admissible where the character of the wife has been assailed, not generally, but only by proof of particular acts of misconduct."

In the course of the opinion in that case, Bronson, C. J., said:

"Evidence of general character is not so freely admitted now as it was formerly. A party to a civil suit was at one time, or rather on one occasion, allowed to give evidence of his good character in answer to circumstantial evidence on the other side imputing to him a gross fraud. Ruan v. Perry, 3 Caines, 120. But that case was long since overruled. Gough v. St. John, 16 Wend. 646. And this court has recently held in Houghtaling v. Kilderhouse, 1 N. Y. 530, 2 Barb. 149, that, in actions of slander for charging the plaintiff with killing the defendant's horses by poison, the plaintiff cannot give evidence of his good character in answer to evidence on the other side tending to show him guilty of the crime imputed to him. In point of principle, that case goes the whole length of deciding the one under consideration; for here the defendant gave no evidence touching the character of the wife, anterior to the misconduct in question."

In People v. Gay, 3 Seld. 378, it was held, viz.:

"A party is not permitted to give evidence of the good character of his witness unless evidence has been given on the other side, either upon direct or cross examination, tending to impeach his general character."

In Schaeffer v. Oppenheimer, 9 N. Y. St. Rep. 688, it was held:

"In an action to recover damages for an alleged indecent assault by defendant upon plaintiff, whereby she became pregnant and gave birth to a child, evidence of the good reputation of the plaintiff is not admissible where her character has not been assailed generally, but only by proof of particular acts of misconduct."

In Young v. Johnson, 123 N. Y. 234, 25 N. E. 363, evidence was offered in an action brought by the plaintiff against the defendant for having defiled her, and with force and arms assaulted her, and the court says, at page 234, 123 N. Y., and page 364, 25 N. E., viz.:

"After the defendant had given his proof and rested, the plaintiff called witnesses, and offered to prove by them that she was a person of good moral character in the community where she lived, according to the speech of people. This evidence was offered, as stated by plaintiff's counsel, for the purpose of corroborating the main facts in the case, and rebutting the presumption which the specific acts shown might have raised against her, and as bearing upon her character for truth and veracity. The defendant's counsel stated that he made no claim that the plaintiff's character was not good, according to common report, and objected to the proof as incompetent. The court sustained the objection upon the ground that, if it was competent at all, it was part of the plaintiff's affirmative case; and to this ruling the plaintiff excepted. As the defendant had not attacked the general reputation of the plaintiff for truth and veracity, and, as he expressly disclaimed any purpose to do so, evidence bearing upon the plaintiff's character for truth, to corroborate her as a witness, was not admissible. People v. Hulse, 3 Hill, 309; Pratt v. Andrews, 4 N. Y. 493; People v. Gay, 7 N. Y. 378. If the testimony was admissible as bearing upon the general issues in the case, it could have been given before the plaintiff rested, and it was not error for the court to exclude it when offered. This ruling was an exercise of discretion on the part of the trial court that is not subject to review."

In Stafford v. Association (Sup.) 22 N. Y. Supp. 1008, and 142 N. Y. 598, 37 N. E. 625, in an action brought for libel, the court, at page 310, 142 N. Y., and page 625, 37 N. E., observed:

"The general rule as to the impropriety of permitting a party to give evidence of his good reputation, in actions for the recovery of damages for libel or slander, has reference to cases where reputation is not a material issue, or where it has not been attacked. The reason for it is in the absence of any usefulness in proving that which the law already assumes, and because the character of the complaint does not form the basis for the recovery of general damages. But this case differs from those relied upon by the appellant in certain aspects. In the first place, the plaintiff's allegation was put in issue by the answer. It is true that it was unnecessary for the plaintiff to allege as she did with respect to her reputation; but, having done so, the defendant, in choosing to make an issue upon the answer, opened the door for the offer of evidence. In the next place, when the question of materiality was raised, it was then open to defendant to disclaim any purpose of questioning the plaintiff's reputation. But it did not do so. The objection that 'it was not one of the issues under the pleadings,' of course, was not true; while, if the proof was immaterial, then no harm can be said to result from giving it, and in establishing that which the law presumed. The very effect before the jury of failing to disclaim any purpose of questioning the plaintiff's character, when the question was raised upon the issue, and when endeavoring to prevent any proof as to what it was, must have been bad, and, as I think, warranted the trial judge, under the circumstances, in permitting evidence to be given. I do not think the plaintiff was absolutely bound, in the face of an issue tendered by the defendant as to her reputation for chastity and virtue, to sit quiet, and to rest upon the legal presumption. The evidence bore upon an issue in the case which the defendant could have avoided, and the plaintiff, in anticipating any possible attack and in insisting upon the admission of the evidence in question, in the absence of any disclaimer on the part of the defendant, should not be made to suffer from the ruling in question. She

very properly offered it as a part of her case (Young v. Johnson, 123 N. Y. 226, 25 N. E. 363); and the trial judge committed no error in permitting proof of what the law assumed."

And the opinion further continues, after referring to Young v. Johnson, 123 N. Y. 226, 25 N. E. 363, and says of that case that:

"The exclusion of the evidence was upheld here upon the ground that the plaintiff's reputation had not been attacked, and that the defendant had expressly disclaimed any such purpose. In that case it was significantly remarked that if the testimony was admissible, as bearing upon the general issues in the case, it could have been given before plaintiff rested her case."

In that case the complaint alleged that the plaintiff was of "good character and repute, and enjoyed the respect of her friends and acquaintances and of the community." The answer stated that the defendant "had no knowledge or information sufficient to form a belief as to the allegations contained in that paragraph of the complaint." The case further states:

"At the commencement of her case, the plaintiff called witnesses to prove her allegations, and the defendant objected, upon the grounds of immateriality and of incompetency, and also that it is not one of the issues under the pleadings."

The judge further observes:

"The general rule as to the impropriety of permitting a party to give evidence of his good reputation, in actions for the recovery of damages for libel or slander, has reference to cases where reputation is not a material issue, or where it has not been attacked. The reason for it is in the absence of any usefulness in proving that which the law already assumes, and because the character of the complaint does not form the basis for the recovery of general damages."

If we turn to the complaint in the case in hand, we find the following allegation:

"Plaintiff further alleges that she has always been of chaste character and good repute, enjoying the respect and esteem of her acquaintances, and of all persons with whom she has been associated in personal or business relations."

The answer, after admitting that the defendant resides in Rochester, and is engaged in the business of manufacturing infants' shoes, proceeds, viz.:

"This defendant, further answering said complaint, denies each and every allegation thereof, except as hereinafter qualified or explained."

It then proceeds to allege that:

"He had heard and been informed that the plaintiff, as an unmarried female, was with child, and carried a child in her belly, and that such reports were commonly reported in the neighborhood in which she resided at the time, and that whatever he has said of or concerning the plaintiff was stated in confidence to persons inquiring of and concerning her," etc.

We therefore find in the complaint an averment of her good character, and a denial thereof in the answer, apparently bringing the case within the doctrine laid down in Stafford v. Association, supra. It is to be observed that when the evidence was offered, at folio 202, to be given by the witness Copeland, there was no disclaimer by the defendant of an intention to attack the character of the plaintiff for chastity or for veracity. It seems, therefore, that the exception found at folio

203 does not present error. The witness Rutherford, at folio 207, was permitted to give similar evidence without any objection on the part of defendant. The witness stated: "Her reputation for chastity and propriety of conduct has been good." I am inclined to think that the exceptions alluded to do not present prejudicial error, requiring us to interfere with the verdict.

Upon the ground that the damages are excessive, a new trial should be ordered.

GREEN, J., concurs.

WARD, J. (dissenting). This is an action of slander. The plaintiff was an unmarried woman, doing business in Rochester, N. Y., in the manufacture of infants' shoes. The defendant was in the same business in that city. The plaintiff worked for the defendant in that business at first, but finally concluded to go into business herself. Difficulty arose, and the defendant became angry at her, and charged her with stealing his lasts and patterns, and using them in her business, and taking a list of his customers, and finally charged her with unchastity, with being pregnant and carrying a child in her belly, and going to Boston to get rid of it, and getting rid of it. He said this to several persons coming to inquire of him about her, with a view of going into business with her or of patronizing her. He also said, publicly, that she was not a fit person to go with his daughter, and talked about her until the matter became notorious in the vicinity where the parties lived. He admitted, when he was examined upon the stand as a witness, that he had said these things to these several persons, but said that he had been told that they were true, and he sought to shield himself under information he had received from others. Not a particle of evidence was given showing the truth of these charges, while, on the contrary, a number of good witnesses who knew the plaintiff testified as to her good character and behavior. The slander was gross, malicious, and without a shadow of justification.

The appellant's counsel claims that it was error to permit the plaintiff to show her good character by the witnesses. The trial court is sustained in its rulings upon that subject by the case of Stafford v. Association, 142 N. Y. 598, 37 N. E. 625. The pleadings created the issue as to the plaintiff's character, and the evidence was competent.

The defendant was a witness in his own behalf, and, in giving the sources of his information, he testified, upon the subject of the plaintiff's chastity, that one Walker had told him that Henry L. Cash had said that he had seen the plaintiff and one Kennedy kissing each other. The plaintiff called Mr. Cash, and proved by him that he had seen nothing of the kind. This evidence was objected to by the defendant, and its reception is here alleged as error. I think, inasmuch as the court permitted the defendant, by way of mitigation of damages, to prove what he had heard other persons say, it was competent for the plaintiff to call those persons, and prove by them, if she could, that they had said nothing of the kind. The jury might have been prejudiced against the plaintiff by this evidence had she not introduced Mr. Cash.

The defendant had testified that one Burkhard had given him in-

formation that the defendant was pregnant. Burkhard lived near by, and had substantially, as the defendant claimed, furnished him with information concerning her condition, upon which the defendant based his charge. Mr. Burkhard was not sworn as a witness, although it appears that he was sitting by during the trial. He could not therefore be asked whether he had any feeling of hostility towards the plaintiff.

The plaintiff, in rebuttal, was called upon the stand, and asked to testify to a conversation that she had had with Burkhard in regard to a check that he had received from Mr. Kennedy. It seems that the check was worthless, and the plaintiff told him he would have a good time collecting it, as the bank had been notified not to accept it; that, in the conversation Burkhard became very angry, and said he would get even with the plaintiff for it, and she testified that she and Burkhard had not been on pleasant terms since. This evidence was received under the proposition of the plaintiff's counsel to show unfriendly relations between Burkhard and the plaintiff. This the defendant alleges was error. The defendant having stood upon Burkhard's slanders of the plaintiff in mitigation, and Burkhard not being a witness, I think it was proper to show as an independent fact that he had a motive in this ill feeling which he had towards the plaintiff to make these statements. The plaintiff was powerless to show this ill feeling except by proving the fact, and she had as much right to prove it by herself as by calling Mr. Burkhard upon the stand for that purpose. This evidence was competent from the necessity of the case. Of course, if Burkhard had been placed upon the stand by the defendant, and had testified that he had informed the defendant what the defendant testified that he had upon the subject of the plaintiff's chastity, it would have been proper for the plaintiff to have shown his hostility by cross-examination; but the defendant did not choose to put Burkhard on the stand, and the only remedy left the plaintiff by which to protect herself, and to show Burkhard's ill feeling towards her, was to prove it as an independent fact. But, granting that there was error in the reception of this evidence, I do not think it is sufficient to reverse this judgment. The court gave a full and fair charge to the jury, and no exceptions were taken to it, and I think justice was done in the case, nor was the verdict excessive. This assault upon her chastity and honor, if believed, was of the gravest character, and would utterly destroy her position as a woman and affect her business relations. Much larger verdicts have been given in such cases, and sustained. I doubt whether a case can be found in the books where a verdict of this size, in such a case, has been disturbed as excessive.

The judgment and order appealed from should be affirmed, with costs.