Ridgeway State Bank, Appellant, vs. Bird, Respondent.

*December 9, 1924—January 13, 1925.*

*Slander: Utterances elicited by trick: Statements to employees of plaintiff: Recovery by plaintiff: Action by bank: Special damages: Detectives employed to trace rumors: Question for jury.*

1. In an action for slander brought by a bank, both the cashier and the president testified at the trial that the persons to whom the alleged slanderous words were spoken were detectives hired to investigate rumors derogatory to the integrity of the cashier in his capacity as an officer of the village in which the bank was located, although both had testified on adverse examination before trial that they were employed to

investigate rumors as to the solvency of the bank. *Held,* since it was undisputed that the detectives were hired and paid by the cashier individually and there were actually rumors afloat concerning the cashier, it was a question for the jury whether the detectives were agents for the bank or for the cashier individually. p. 423.

2. If the slander of a bank is such as to relate to its business so as to affect the confidence of the public and drive away its customers, or where it affects its credit, it is slanderous *per se;* and in this case, where the slanderous words, properly construed, raised a doubt as to the bank's solvency, and implied the making of false reports and the keeping of improper records, the bank is entitled, upon a proper showing, to damages without proving special damages. p. 426.

3. Where the utterances complained of are elicited by the plaintiff either by a trick or for the purpose of predicating an action thereon, the plaintiff should not be permitted to recover; and in this case, if the detectives were agents of the plaintiff bank when the words were spoken, there will be no recovery, while the rule will be otherwise if the jury finds they were the agents of the cashier at the time. p. 427.

APPEAL from a judgment of the county court of Iowa county: ALDRO JENKS, Judge. *Reversed.*

For the appellant there was a brief by *Fiedler & Garrigan* of Beloit and *Kopp & Brunckhorst* of Platteville, and oral argument by *E. C. Fiedler.*

For the respondent there was a brief by *McGeever & McGeever* of Dodgeville, and oral argument by *William C. McGeever.*

DOERFLER, J.   Plaintiff's action is brought to recover damages for slander.   At the time of the utterance of the alleged slanderous remarks and for a long time prior thereto, one Laughlin was the president of the plaintiff bank, a small banking institution located in the village of Ridgeway, and one J. T. Paul was its cashier, and these two officers were the owners of practically all of its capital stock.   The complaint charges that on August 24, 1923, the defendant maliciously spoke of and concerning the said plaintiff, in the presence

and hearing of one John A. Wise and one Joseph P. Hayes, in substance the following false and defamatory words:

"That the bank handles less than one quarter of the business in that community, and that its business is growing less from year to year; that Paul and Laughlin (meaning the cashier and president, respectively, of the bank) are crooks, and that the people in and about the village of Ridgeway are afraid to do business with them; that there is something pretty wrong with the financial end of the bank, because just before the bank examiners come around, Laughlin and Paul have to sneak out and borrow $15,000 or $18,000 in order to have their affairs in a condition that will satisfy the bank examiners; that when the income-tax reports are made out, such reports show about $8,000 on hand, while when the bank examiners come around they have about three times as much; that when the bank examiners come to town to make an examination of the bank it becomes necessary to borrow money in order to make the books of the bank balance; that there is a case now pending in which the officers of the bank are charged with slipping in foolers in the records of the bank, in order to fool the banking commissioners."

While other slanderous utterances were charged in the complaint and shown by the evidence, the foregoing are specifically referred to in order to show the general nature and character of the alleged slanderous language used.

Said Paul, in addition to being the bank's cashier, is also the president of the village of Ridgeway, member of the school board, and the village clerk. Some time prior to the making of the said alleged slanderous utterances rumors were afloat in and about said village to the effect that said Paul, as an official of said village, had wrongfully received money from the village in an electric-light deal. On the trial of the action Paul claimed that, in order to ascertain the source of such rumors and to fix the responsibility or the blame upon those instrumental in originating and spreading the same, he hired the Russell Detective Agency of Milwaukee to make an investigation. The detective agency

sent Wise and Hayes, two detectives in its employ, to the
village, and they called upon the defendant at his place of
business and there made an effort to run down these alleged
rumors.   The record discloses that, while these detectives
actually did carry on some investigation which concerned
Paul as an officer of the village, their principal effort was
directed towards eliciting and procuring statements from
the defendant concerning the bank.   These detectives repre-
sented to the defendant that they represented men of means
who were interested in the establishment of country banks
and that they considered the village of Ridgeway a good
place for the location of a new bank; that their clients had
command·of ample means; and they then proceeded to make
inquiries from the defendant as to the ability of Paul as a
cashier to handle the business of the proposed new bank;
and pursuant to such false statements they obtained the con-
fidence of the defendant, who readily volunteered the slan-
derous statements charged in the complaint.   After an inter-
view covering a period of about one hour the two detectives
withdrew to their room in the hotel, and there notes of the
conversation at defendant's place of business were jotted
down on a piece of paper.   The record does not disclose
anything definite with respect to any alleged slanderous
statements made by the defendant concerning Paul in his
capacity as an officer of the village, and it further appears
that no notes were made upon this subject.

Paul testified upon the trial that the detective agency was
not hired by him as an officer of the bank, and the sole au-
thority delegated to the agency came from him as an indi-
vidual, to examine into the alleged false rumors concerning
his activities as an officer of the village.   Upon an adverse
examination in this action of Paul as an officer of the bank he
testified that he first conferred with Mr. Laughlin, the pres-
ident of the bank, before he hired the detective agency; that
both he and Laughlin transacted considerable business of the
bank without consulting the directors; that he retained the

agency for the bank in the same manner as he transacted other business of the bank. Further on, however, in his testimony he expressly makes the statement that he hired these men solely to investigate the rumors affecting him in his official capacity as an officer of the village, and that he did not authorize an investigation with respect to any rumors concerning the bank. On his examination as a witness for the plaintiff in this action he also testified positively that the bank had nothing to do with the hiring of the detective agency; that he individually retained the agency; and that he personally paid for the services rendered.

Mr. Laughlin, the president of the bank, upon adverse examination before trial, testified that Mr. Paul, the cashier, conferred with him before hiring the detective agency; that the agency was hired by Paul to investigate rumors concerning the bank; but on the trial he repudiated the statements made on the adverse examination, claiming that during the progress of such examination he was laboring under a false impression, the falsity of which he did not fully realize or comprehend until after the conclusion of the examination, and that Paul, the cashier, had set him right with respect to his mistake.

At the close of plaintiff's testimony the court granted a nonsuit on the ground that the detectives at the time of the utterance of the slanderous words were the agents and representatives of the bank; that in legal effect the statements made to them were the same as though made to the bank directly; and that therefore there was no publication of the slander.

It becomes apparent from an examination of the evidence that the plaintiff did not establish a strong case. The testimony of both the cashier and the president was highly contradictory. The excuse offered by Laughlin, the president, as to his change of attitude on the trial from that assumed on the adverse examination is somewhat plausible. This, however, cannot be said of the testimony of Paul. It must

be assumed that he, above all, knew at the time of the adverse examination whether he hired the detective agency for the bank or whether he hired it for his own individual purposes.    His change of position does not reflect credit upon his testimony, nor is his testimony entitled to great weight.

While the two detectives testified that they made the investigation pursuant to directions received from their superiors, and that their instructions limited them to an investigation of Paul's activities as an officer of the village, practically the entire conversation with the defendant concerned the affairs of the bank, and it is with reference to the bank's matters solely that notes of the conversation were made and preserved.    It is not surprising, therefore, that the learned trial judge placed little or no credence in the testimony of either Paul or Laughlin.    However, it has been held by this court that "if there is any credible evidence which to a reasonable mind can support an inference in favor of a party, the question is for the jury." *Wiesman v. American Ins. Co.* 184 Wis. 523, 199 N. W. 55, 200 N. W. 304.    It is undisputed that Paul paid the detectives individually and that no portion of the amount so paid was contributed by the bank.    It is also an established fact that rumors were afloat in and around Ridgeway which affected the integrity of Paul as an officer of the village.    It also appears that Paul was instrumental in hiring the agency. There therefore exist certain facts and circumstances which were corroborative of Paul's testimony that the agency was not hired to investigate the rumors concerning the bank, but rumors concerning his honesty as a village official.    Under these circumstances it can hardly be said that there existed no credible evidence which to a reasonable mind could support an inference in favor of the plaintiff's contention, and the question was therefore properly one for the jury to determine.

On the part of the defendant it is argued that, even if

the court erred in ordering a nonsuit, no evidence was introduced on plaintiff's behalf establishing special damages, and that therefore the only damages which could be awarded to plaintiff would be nominal damages, and inasmuch as the instant action belongs to a class of actions known as "hard actions," the judgment should be affirmed. In support of the position taken by defendant's counsel they cite *Barber v. Kilbourn,* 16 Wis. 485; *Maxwell v. Kennedy,* 50 Wis. 645, 7 N. W. 657; *Barnard v. Cohen,* 165 Wis. 417, 162 N. W. 480; *Jones v. King,* 33 Wis. 422; and *Cronemillar v. Duluth-Superior M. Co.* 134 Wis. 248, 114 N. W. 432.

The position of defendant's counsel can be based solely upon the theory that the slanderous words charged and proven were of such a nature as not to be actionable *per se;* that special damages alone can be awarded where such damages are properly alleged and proven. The record clearly discloses that no special damages were shown.

In the case of *Gross Coal Co. v. Rose,* 126 Wis. 24, 105 N. W. 225, the action, among other things, was brought for a slander, and the slanderous words were charged as having been uttered of and concerning the plaintiff (a corporation), and consisted of a statement that the plaintiff, while engaged in the business of selling coal, charged extortionate prices, and refused to sell coal, even at such prices, to people suffering from sickness. It was held in that case that the words were spoken of the plaintiff in direct reference to its business or trade and that they necessarily tended to injure it in its business, and that the slanderous words were actionable *per se,* and that it was not necessary to allege special damages. In support of such ruling the court cited Newell, Libel & S. (2d ed.) p. 168, §§ 1, 2; 18 Am. & Eng. Ency. of Law (2d ed.) 942.

In the case of *Hacker v. Heiney,* 111 Wis. 313, 318, 87 N. W. 249, which was an action for slander in which the plaintiff was charged with unchastity, the defendant urged that nonsuit should have been granted because the plaintiff

suffered no actual damages. In that case the court said (p. 318) : "The authorities are overwhelming to the proposition that from the speaking of words actionable *per se* a presumption of actual damage arises."

The plaintiff is a state banking corporation. Its principal business consists in receiving deposits of its patrons, of investing them in proper securities, and in making loans to its patrons. It is a business of trust and confidence, and without these elements no banking institution can be successfully prosecuted or maintained. Many hundreds of these banks are distributed all over the state. They are under the supervision, regulation, and control of the banking department. Inspections by the banking department are made quite regularly during long intervals. These inspections are designed to elicit the true condition of the bank, and, if insolvency or fraud is disclosed, the department is authorized to take possession of the assets of the bank, and to either liquidate the institution or to hold the assets until proper arrangements can be effected for a reorganization. In every bank there are three interested parties: first, the banking corporation; second, the depositors and those who do business with the bank; and third, the public. The legislature, by sec. 4569$m$ of the Statutes, has made it a penal offense to circulate slanderous statements concerning a financial institution like a bank.

Townshend on Slander and Libel (4th ed.) p. 472, sec. 263, uses the following language:

"As regards a corporation engaged in manufacturing, trading, or banking, or other occupation in which credit may be material to its success, there language concerning such a corporation calculated to injuriously affect its credit must necessarily occasion it pecuniary injury, and in such a case an action may be maintained by the corporation without proof of any special damage. Thus, as regards language concerning corporations, some is actionable *per se,* and some is actionable only by reason of special damage."

"A charge against a street railway corporation of keeping

two sets of books, one to make settlement with the city auditor, of its license, and one for its stockholders, is one involving moral turpitude and comes within a class that is actionable *per se.*" *Cincinnati St. R. Co. v. Cincinnati Daily Tribune Co.* 31 Ohio L. J. 111.

A banking corporation may have a character and a reputation as to its trade or business like that of an individual. If the slander is such as relates to its business so as to affect the confidence of the public and drive away its customers, or where it affects its credit and weakens the public confidence so that it is more difficult to obtain credit, it is slanderous *per se,* and the damages form a proper subject of award by the jury. *Brayton v. Cleveland S. P. Co.* 63 Ohio St. 83, 57 N. E. 1085, 52 L. R. A. 525, and note.

In the instant case the slanderous words, properly construed, raised a doubt as to the bank's solvency, and such words also imply the making of false reports to the bank examiner, and the creating of a false impression as to the actual cash on hand, the keeping of improper records, etc. Under the authorities above cited such words are actionable *per se,* and the plaintiff is entitled, upon proper showing, to damages without proving special damages.

In its decision the court based its order for a nonsuit upon the following language appearing in 25 Cyc. 370:

"If plaintiff consented to or authorized the publication complained of, he cannot recover for any injury sustained by reason of the publication; and the same rule applies to a publication solicited or induced by inquiry on the part of plaintiff or his agent, at least if it was procured by the fraudulent contrivance of plaintiff himself with a view to an action."

The above quotation from Cyc. unquestionably is a correct general statement of the law applicable. Pursuant, however, to what has heretofore been said in this opinion, the court erred in not permitting the jury to determine whether the detectives acted as agents for the bank or as agents for

Paul individually. Assuming that an agency was created for the bank, then under the authorities, and under the evidence adduced upon the trial, the slanderous words were elicited by the agents pursuant to a trick, and under the rule laid down in *Nott v. Stoddard,* 38 Vt. 25, plaintiff could not make the words thus elicited a ground for action. See, also, *White v. Newcomb,* 25 App. Div. 397, 401, 49 N. Y. Supp. 704; *Sutton v. Smith,* 13 Mo. 120, 124.

On the other hand, it has been held in *Richardson v. Gunby,* 88 Kan. 47, 127 Pac. 533, 42 L. R. A. N. s. 520, that plaintiff cannot recover where he instigates or invites the libel for the purpose of predicating an action for damages upon it. This view is also supported by the quotation from Cyc. above set forth and the cases cited in the note.

It would appear to us that where the utterances are elicited by the plaintiff, either by a trick or for the purpose of predicating an action thereon, the plaintiff should not be permitted to recover. Assuming, however, that the detectives were acting as the agents for the bank, plaintiff's own evidence in this case clearly shows that the slanderous words were elicited by false statements and by trick. Upon the record, therefore, it should have been left for the jury to determine whether the detectives were hired as agents for Paul or as agents for the bank. If it be determined that they were acting as agents for Paul, then the plaintiff is entitled to recover, in the absence of truth as a justification or circumstances of legal excuse. On the other hand, if it be found that they were acting as the agents of the bank, then no recovery can be had, because under the evidence the slanderous statements were elicited by trick.

*By the Court.*—The judgment of the trial court is reversed, and the cause is remanded for further proceedings according to law.

Eschweiler, J., dissents.