## MEYERSON v. HURLBUT et al. *
### No. 6975.

United States Court of Appeals for the District of Columbia.
Argued Feb. 11, 1938.
Decided April 18, 1938.

Maurice Friedman and C. Leo DeOrsey, both of Washington, D. C., for appellant.

Dean Hill Stanley, of Washington, D. C., for appellees.

Before GRONER, Chief Justice, and MILLER and EDGERTON, Associate Justices.

*Writ of certiorari denied 59 S.Ct. 69, 83 L.Ed. —.

EDGERTON, Associate Justice.

This is an appeal from a judgment of the District Court in a suit for slander. Defendants demurred to the declaration and the demurrer was sustained. The sole question is whether the declaration stated a cause of action.

The first count of the declaration alleges that the Ahlberg Bearing Company is an Illinois corporation doing business in the District of Columbia; that W. D. Hurlbut is the manager of its local office; that plaintiff is in the business of buying and selling parts for passenger and commercial vehicles; and that on February 20, 1936, defendant Company through its agent Hurlbut said of the plaintiff in the presence of at least one person that "George Meyerson has been cutting prices to any garages, fleets or dealers; George Meyerson has been buying merchandise from jobbers in the District and reselling below cost, just to hold the business; various Washington jobbers have cut Meyerson off on Open Account Basis; various Washington jobbers have refused to sell merchandise to George Meyerson." Plaintiff declares that by reason of these statements he has been injured in his business and has been brought into public scandal and disgrace and held up to public ridicule, hatred, and contempt, whereby he has been damaged in the sum of $25,000. Substantially the same allegations are contained in the second count. Plaintiff there alleges that at a later date, February 22, 1936, defendant said to him in the presence of at least one other person: "Meyerson, you have been cutting prices to any garages, fleets or dealers. You are cutting prices and you know it; I said that you have been buying merchandise from jobbers and reselling below your cost —anything to hold the business. You have been cutting prices to the Standard Oil Company on Timken Roller Bearings. Various Washington jobbers have cut you off on Open Account Basis. Various Washington jobbers have refused to sell merchandise to you." Innuendoes accompanying these allegations state that they mean that plaintiff was guilty of fraudulent, unfair and unethical trade practices, and that his credit was bad.

Since no special damages are alleged, the declaration is demurrable unless defendant's words are actionable as slander per se. To be so actionable, spoken words must "import a charge that the party has been guilty of a criminal offence involving moral turpitude, or that the party is infected with a contagious distemper," or they must be "prejudicial in a pecuniary sense to a person in office or to a person engaged as a livelihood in a profession or trade." Pollard v. Lyon, 91 U.S. 225, 227, 23 L.Ed. 308. The question here is whether the words are prejudicial to plaintiff in his trade.

It has been held in the past that charges of price cutting directed at a merchant are not actionable per se. Achorn & Co. v. Piper, 1885, 66 Iowa 694, 24 N.W. 513; cf. Dorn & McGinty v. Cooper, 1908, 139 Iowa 742, 750, 117 N.W. 1, 118 N.W. 35, 16 Ann.Cas. 744; Willis v. Eclipse Manufacturing Co., 1903, 81 App.Div. 591, 81 N.Y.S. 359 ("cutting prices * * * on the Morrow Coaster Brake"). Malouf v. Metropolitan Life Ins. Co., 1929, 75 Utah 175, 183, 283 P. 1065, contains a dictum (page 1068) that: "Certainly, if one should falsely publish of a merchant or trader that he was a cheat and a scoundrel because he sold goods at cost and below the general market value, no libel per se is charged because the derogatory terms, based alone upon a circumstance or transaction itself entirely legitimate and proper, and upon something which the libelant had the undoubted right to do, have, on the face of the published article, not their ordinary meaning." The per curiam opinion in King Kullen Grocery Co. v. Astor, 1936, 249 App.Div. 655, 291 N.Y.S. 488, throws little light on the point, because it does not disclose the facts. Apparently the plaintiff in that case held itself out to be a "price wrecker;" what the defendants said does not appear. In Sears, Roebuck & Co. v. Federal Trade Commission, 7 Cir., 1919, 258 F. 307, 6 A.L.R. 358, it was held that the statutes defining unfair competition were not intended to restrain owners of property from selling below cost.

But the court should notice the familiar fact that the practice of selling goods below cost has come in recent years to be widely and sharply condemned as harmful. The National Industrial Recovery Act of 1933 sought to prevent "destructive" price-cutting. 48 Stat. 197, 15 U.S.C.A. § 704. In 1937, by an amendment to the antitrust laws, Congress expressly authorized contracts between buyer and seller to fix minimum resale prices for identified goods. 50 Stat. 693, 15 U.S.C.A. § 1. The Supreme Court has upheld an Illinois statute of 1935,

Ill.Rev.Stat.1937, c. 121½, § 188 et seq., and the New York Court of Appeals a New York statute of the same year, Laws N.Y. 1937, c. 976, Unconsol.Laws N.Y. § 2201 et seq., which went further and made it actionable as unfair competition for any person, whether a party to the contract or not, to resell below the price fixed by the contract. Old Dearborn Distributing Co. v. Seagram-Distillers Corp., 299 U.S. 183, 57 S.Ct. 139, 81 L.Ed. 109, 106 A.L.R. 1476; Bourjois Sales Corp. v. Dorfman, 273 N.Y. 167, 7 N.E.2d 30, 110 A.L.R. 1411. Defendant in the present case evidently shared, and believed that jobbers in plaintiff's line shared, the growing antipathy to price-cutting.

It is true that price-cutting is common, and that there is no consensus against it. Accordingly, Peck v. Tribune Co., 214 U.S. 185, 189, 190, 29 S.Ct. 554, 53 L.Ed. 960, 16 Ann.Cas. 1075, is in point. There plaintiff sued for libel on the ground that defendant published an advertisement which represented plaintiff as a nurse who praised Duffy's Pure Malt Whiskey. The trial court directed a verdict for the defendant. Its action was sustained by the Circuit Court of Appeals, 7 Cir., 154 F. 330, but reversed by the Supreme Court. Speaking for a unanimous Court, Mr. Justice Holmes said that (page 556) although "there was no general consensus of opinion that to drink whisky is wrong, or that to be a nurse is discreditable," and "very possibly giving a certificate and the use of one's portrait in aid of an advertisement would be regarded with. irony, or a stronger feeling, only by a few," yet "such inquiries are beside the point. * * * An unprivileged falsehood need not entail universal hatred to constitute a cause of action. No falsehood is thought about or even known by all the world. No conduct is hated by all. * '* * If a doctor were represented as advertising, the fact that it would affect his standing with others of his profession might make the representation actionable, although advertising is not reputed dishonest, and even seems to be regarded by many with pride. * * * It seems to us impossible to say that the obvious tendency of what is imputed to the plaintiff by this advertisement is not seriously to hurt her standing with a considerable and respectable class in the community. Therefore it was the plaintiff's right to prove her case and go to the jury." We think this principle applies to a charge of price-cutting, though made to only one person.

The case has another aspect. Aspersions on the credit of a business man are clearly defamatory. Newell v. How, 31 Minn. 235, 17 N.W. 383; Hayes v. Press Co., 127 Pa. 642, 18 A. 331, 5 L.R.A. 643, 14 Am.St.Rep. 874. As they tend to injure him in his business, they are slander per se. Ridgeway State Bank v. Bird, 185 Wis. 418, 202 N.W. 170, 37 A.L.R. 1343. It is not disputed that an "open account basis" is a credit basis. Hurlbut, then, said that plaintiff had been refused credit. But in judging the meaning conveyed by words, the publication must be considered in its entirety. Washington Times Co. v. Hines, 55 App.D.C. 326, 5 F.2d 541; Lane v. Washington Daily News, 66 App.D.C. 245, 85 F.2d 822. The reference to refusal of credit followed the reference to price-cutting. Taken as a whole, defendant's words might well mean that jobbers had cut off plaintiff's credit and refused to deal with him because they resented his price policy. On the other hand, the "open account" statement, notwithstanding its context, might well mean that jobbers refused credit to the plaintiff because he was a poor risk. Which meaning the words conveyed was not a question for the court. If language "is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." Washington Post Co. v. Chaloner, 250 U.S. 290, 293, 39 S.Ct. 448, 449, 63 L.Ed. 987, quoting Commercial Pub. Co. v. Smith, 6 Cir., 149 F. 704, 707. King Kullen Grocery Co. v. Astor, Second Department, 249 App.Div. 655, 291 N.Y.S. 488. "It is only when the court can say that the publication is not reasonably capable of any defamatory meaning, and cannot reasonably be understood in any defamatory sense, that the court can rule, as matter of law, that the publication is not libellous." Fahy v. Melrose Free Press, Mass., 10 N.E.2d 187, 188; Washington Times Co. v. Murray, 55 App.D.C. 32, 299 F. 903; Culmer v. Canby, 6 Cir., 101 F. 195, 196, 197; Dupont Engineering Co. v. Nashville Banner Publishing Co., D.C., 13 F.2d 186.

Reversed and remanded.