Miguel A. ZAPATA and Isabel S. Zapata, Appellants,

v.

WOODWARD & LOTHROP, a body corporate, Appellee.

No. 2935.

Municipal Court of Appeals for the District of Columbia.

Argued March 12, 1962.

Decided May 3, 1962.

Martin E. Gerel, Washington, D. C., with whom Joseph H. Koonz, Jr., Washington, D. C., was on the brief, for appellants.

Francis L. Casey, Jr., Washington, D. C., for appellee.

Before HOOD, Chief Judge, QUINN, Associate Judge, and MYERS, Associate Judge of The Municipal Court for the District of Columbia, sitting by designation.

QUINN, Associate Judge.

Mr. Zapata and his wife brought this suit to recover damages arising from an allegedly slanderous accusation directed to Mr. Zapata by a saleswoman while they were customers in appellee's department store. The basis of this appeal is the court's refusal to instruct the jury that the words used by the saleswoman were "slanderous per se."

Appellants went to appellee's downtown department store and purchased a portable stereophonic machine from Mr. Sinker, a salesman in the television and high fidelity department. Mr. Sinker then escorted appellants to the furniture department and asked Mrs. Featherstone, a saleswoman, to assist them in the purchase of a table for the stereophonic machine.

Mr. Zapata testified that he and Mr. Sinker, upon inspecting one of the tables, noticed that it was unsteady. He then put on his glasses and with Mr. Sinker observed that one or two of the caps on the bottom of the table legs were missing. He returned his glasses to his pocket, and Mr. Sinker summoned Mrs. Featherstone and asked her to provide Mr. Zapata with a similar table in better condition. Mrs. Featherstone came over to where they were standing and said that the table was in

good condition and that Mr. Zapata had taken the caps from the end of the legs. Mr. Zapata denied taking the caps but Mrs. Featherstone insisted that he had, adding that she had seen him place the caps in his pocket. When this conversation became heated, Mr. Sinker told Mrs. Featherstone that Mr. Zapata had not taken anything and to apologize; Mrs. Featherstone refused, repeating that she had seen him place the caps in his pocket.

Mrs. Zapata testified that when Mrs. Featherstone came over to assist them at Mr. Sinker's request, she told them that the table had been perfectly all right; that if something was missing, her husband had taken it because she had seen him put something in his pocket.

Mr. Sinker, testifying on behalf of appellee, stated that he did not examine the table and that after calling Mrs. Featherstone, he remained about ten feet from where they were examining the merchandise. He testified that even though he could not hear what was said, he felt some tension from the conversation and believed that someone representing the department store should apologize in order to keep the customer happy, regardless of what had happened.

Mrs. Featherstone testified as follows: Mr. Sinker informed her that some of the caps from the end of the legs were missing and suggested that she find the Zapatas a table in better condition which they could take with them. She searched for some extra caps and on returning to the Zapatas, she thought she saw Mr. Sinker take the caps off the end of the table legs and hand them to Mr. Zapata. She said to Mr. Sinker, "Didn't you give him those?" and to Mr. Zapata, "Don't you have them in your pocket?" When Mr. Zapata replied that he did not, Mrs. Featherstone said, "I think I saw Mr. Sinker give you these and you put them in your pocket. Don't you have them in your pocket? Why look for any more if you have them in your pocket?" Mrs. Featherstone testified that when a customer wanted to take a table with him the sales personnel commonly removed the caps from the end of the legs to prevent them from becoming lost. Following their conversation, Mrs. Featherstone ordered another table to be sent from the warehouse and accepted Mr. Zapata's check in payment.

At the conclusion of the testimony the trial court instructed the jury on the issue of liability, in part, as follows:

"The meaning of the words used is the important consideration for you in this action by the plaintiff. It is for the jury to determine under all the circumstances surrounding it, including the other factors in evidence before you, what meaning the words or the statements conveyed. If you believe as Dr. Zapata has testified that Mrs. Featherstone said he took the articles off the table in a manner which would justify a reasonable person in believing she was accusing him of stealing or deliberately taking them without right, then your finding must be for the plaintiff. On the other hand, if you believe as Mrs. Featherstone testified that she was merely saying he took the articles in a way that would not lead a reasonable person to believe he was being accused of theft or taking without right, then your verdict must be for the defendant."

The jury returned a verdict in favor of appellee. Appellants urge that the trial court erred in refusing to instruct the jury that the words used by Mrs. Featherstone charged the commission of a crime and were "slanderous per se."[1]

1. Due to the changes in the law of defamation and the distinctions which have remained in many jurisdictions between libel and slander, some confusion has resulted in the use of the term "slander per se." One meaning of "slander per se" is that the language is *defamatory* in itself, that is, that the defamatory meaning is

The rule is usually stated that the court determines whether the language in question is capable of a defamatory meaning, and it is for the jury to decide whether it was so understood.[2]

■ If the meaning of the language is unambiguous and reasonably susceptible of but one meaning, it is for the court to say whether the meaning is defamatory or not.[3] However, if the language is capable of two meanings, one actionable and the other not, it is for the jury to determine which of the two meanings would be attributed to it by persons of ordinary understanding under the circumstances.[4]

■ Unless the words are clearly not defamatory, the distinction between slander and slander actionable per se imposes upon the court an additional obligation. Regardless of whether the language is clear and unambiguous, or not clear and susceptible of two meanings, the court must decide whether the language is actionable per se, that is, whether the words fall into one of the categories where damage is presumed and need not be alleged or proved.[5] If the meaning of the language is clear and unambiguous, the trial court, in addition to determining whether the words are defamatory, must decide whether the language is actionable per se. However, if the language is ambiguous and capable of two meanings, one actionable and the other not, the court will only decide whether the words are susceptible of being actionable per se, for the jury must decide whether the words were so understood.

■ Appellants maintain that the language taken in its ordinary meaning and coupled with the circumstances testified to could only lead to the conclusion that Mr. Zapata was being accused of theft; that the trial court thus erred in refusing to instruct the jury that the words were slanderous and actionable per se. However, the instruction on the issue of liability indicates the following: (1) That the trial court found that the language was not clear and unambiguous and susceptible of but one meaning; (2) That the jury could reasonably find that the language was capable of two meanings, one defamatory and one not; (3) That if the jury believed, as Mr. Zapata testified, that Mrs. Featherstone said that he took the articles off the table in a manner which would justify a reasonable person in believing that she was accusing him of stealing or deliberately taking them without right, then the utterance was defamatory and actionable per se; and (4) That if a reasonable person would not so understand the words, the language was not defamatory.

In the light of this instruction, by urging that the trial court erred in refusing

apparent without reliance upon external circumstances. The term was borrowed from the law of libel, where the distinction was made between libel "per se" and "per quod." The other meaning of "slander per se" is that the language is *damaging* in itself, that is, actionable without proof of special damages. Although "slander per se" has often been used as an equivalent of "slander actionable per se" the latter expression is accurate. Harper and James, The Law of Torts, § 5.10, n. 1; see Prosser on Torts, 2d Ed.1955, § 93.

2. Caldwell v. Hayden, 42 App.D.C. 166, 170 (1914); 3 Restatement of Torts, § 614.

3. Washington Post Co. v. Chaloner, 250 U. S. 290, 39 S.Ct. 448, 63 L.Ed. 987

(1919) (libel), cited in Meyerson v. Hurlbut, 68 App.D.C. 360, 98 F.2d 232, 118 A.L.R. 313 (1938), cert. denied 305 U.S. 610, 59 S.Ct. 69, 83 L.Ed. 388 (1938) (slander). See Roper v. Great Atlantic & Pacific Tea Co., D.C.Mun.App., 164 A. 2d 478 (1960).

4. Meyerson v. Hurlbut, ibid.

5. 3 Restatement of Torts, § 615 has taken the position that the court must decide whether the imputation of crime or the affliction of a contagious disease is of such a character as to make it actionable per se, that is, without proof of special damages, and that the court will leave to the jury the determination of whether the language has prejudiced one in his trade or profession.

to instruct the jury that the words used by Mrs. Featherstone were slanderous and actionable per se, appellants assign as error the trial court's refusal to give the jury a peremptory instruction on the issue of liability. They rely heavily upon Roper v. Great Atlantic & Pacific Tea Co., D.C.Mun. App., 164 A.2d 478 (1960), wherein we held that a store manager's statement was slanderous and actionable per se. However, in that case there was no dispute as to the precise language employed by the manager and no conflicting testimony as to what had transpired. The issue was whether the words, interpreted in their plain and natural meaning, would cause hearers of ordinary understanding to reasonably conclude that the girl was being charged with theft. We said that the clear import of the language was an accusation of theft, and that reasonable men could only so conclude; that "if the manager was not accusing the girl of theft, what was he saying?" The case presently before us is clearly distinguishable. Mr. Zapata testified that Mrs. Featherstone said he took the caps from the end of the table leg and after insisting that he had taken them, refused to apologize. On cross-examination he testified that Mrs. Featherstone did not accuse him of being a thief or taking the articles illegally. Mrs. Featherstone testified that she asked Mr. Sinker whether he had taken the caps from the end of the legs and given them to Mr. Zapata, and then asked Mr. Zapata if he had placed them in his pocket.

Appellants' request that the trial judge instruct the jury that the words were slanderous per se was an attempt to withdraw from the jury the issue of liability and leave for its sole consideration the amount of damages. Therefore, construing the evidence most favorably to appellee and giving it the full effect of every legitimate inference that can be drawn therefrom, we are unable to say that reasonable men could only have concluded that Mrs. Featherstone accused Mr. Zapata of stealing or deliberately taking the articles without right.

From the evidence so construed reasonable men might differ as to how the words would be understood. The trial court's ruling, that the matter was for the jury's consideration, was correct and will not be disturbed.

Appellants further urge that a new trial be granted on the additional ground that they were improperly limited in their cross-examination of Mrs. Featherstone. We find no merit in this contention.

Affirmed.