## WASHINGTON POST COMPANY *v.* CHALONER.

### CERTIORARI TO THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 316.   Argued April 22, 23, 1919.—Decided June 2, 1919.

A news statement that C shot and killed G while G was abusing his wife who had taken refuge at C's home, *held* not libelous *per se*. P. 293.

A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. If it is capable of two meanings, one of which would be libelous and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read. *Id.*

Irrelevant and scandalous matter may be stricken from the files of this court. P. 294.

47 App. D. C. 66, reversed.

THE case is stated in the opinion.

*Mr. Wilton J. Lambert* and *Mr. Joseph W. Bailey,* with whom *Mr. R. H. Yeatman* was on the brief, for petitioner.

*Mr. E. F. Colladay* and *Mr. Sidney J. Dudley,* with whom *Mr. H. S. Barger* was on the briefs, for respondent, cited the following in support of the contention that the words are actionable *per se: Washington Times* v. *Downey,* 26 App. D. C. 258; *Taylor* v. *Casey,* 1 Minor (Ala.), 258; *Culmer* v. *Canby,* 101 Fed. Rep. 195; *Raymond* v. *United States,* 25 App. D. C. 555; *Herrick* v. *Tribune Co.,* 108 Ill. App. 244; *Atwill* v. *Mackintosh,* 120 Massachusetts, 177; *Williams* v. *Fuller,* 68 Nebraska, 362; *Morse* v. *Times Republican Printing Co.,* 124 Iowa, 707; *Weeks* v.

*News Publishing Co.,* 117 Maryland, 126; *Woolworth* v. *Star Company,* 90 N. Y. S. 147; 97 App. Div. 525; *Belo* v. *Fuller,* 84 Texas, 450; 17 Ruling Case Law, § 53; *Pollard* v. *Lyon,* 91 U. S. 225; *Peck* v. *Tribune Company,* 214 U. S. 185.

*Mr. John Armstrong Chaloner,* the respondent, filed a separate document.

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

Saturday, April 3, 1909, The Washington Post, a daily newspaper of wide circulation published by petitioner, contained the following item:

"John Armstrong Chaloner (Chanler), brother of Lewis Stuyvesant Chanler, of New York, and former husband of Amelie Rives, the authoress, now Princess Troubetskoy, is recuperating at Shadeland, the country home of Maj. Thomas L. Emry, near Weldon, N. C., where he had gone to recuperate following a nervous breakdown as a result of the tragedy at his home, Merry Mills, near Cobham, on March 15, when he shot and killed John Gillard, while the latter was abusing his wife, who had taken refuge at Merry Mills, Chaloner's home. Following the shooting, Chaloner suffered a nervous breakdown, and was ordered by his physician to take a long rest. He decided to visit his old friend, Maj. Emry, who, with Chaloner, was instrumental in founding Roanoke Rapids, a manufacturing town 5 miles from Weldon. Chaloner arrived at Weldon after traveling all night and was immediately hurried to Shadeland, where he received medical attention and temporary relief."

Claiming damages on account of shame, infamy and disgrace inflicted, respondent brought an action against the publishing company in the Supreme Court, District of Co-

lumbia. He alleged: "The said defendant, meaning and intending . . . to charge the plaintiff with the crime of murder in the killing of one John Gillard when on the contrary the fact was as defendant well knew, that while the plaintiff was engaged in a most laudable effort to prevent the said Gillard from murdering his wife, . . . the said Gillard was in fact killed by accidental explosion of a pistol," and "contriving and intending to deprive the plaintiff of his said good name, credit and reputation, and to bring him into scandal and disrepute among his friends, neighbors and acquaintances, . . . falsely and maliciously composed and published and caused to be composed and published of and concerning the plaintiff in a certain newspaper, etc.," the above-quoted item.

Upon respondent's request the trial court charged—"The jury are instructed that the words contained in the publication sued on by the plaintiff herein imply that the crime of murder had been committed by the plaintiff and are actionable *per se.*" It further said to them—"The only question really, for you to consider, is how much damages the plaintiff should be allowed. You ought to allow him compensation; no special damages have been shown, and only general damages can be allowed, but where the libel is published, where words are published of the plaintiff which constituted a libel, which charge him with having committed a crime, for instance, as in this case, the law presumes that the plaintiff has been damaged, without proof of any special damage, because the law takes notice of the fact that a libel travels, and it comes to a great many different readers, and that it would be impossible for a plaintiff to trace out the circulation of the libel, and show by whom it had been read, and how it had affected their opinion of him, and all that; so that the jury are justified in allowing substantial damages to a plaintiff against whom a libel has been published, without proof of any particular or substantial damage to him."

Judgment in favor of respondent upon a verdict for $10,000 was affirmed by the Court of Appeals, 36 App. D. C. 231; 47 App. D. C. 66.

We think the quoted instructions to the jury were erroneous and harmful to petitioner.

The applicable rule was tersely stated by the Circuit Court of Appeals, Sixth Circuit, through Judge Lurton, afterwards of this court, in *Commercial Publishing Co.* v. *Smith*, 149 Fed. Rep. 704, 706, 707. Citing supporting authorities, he said:

"A publication claimed to be defamatory must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it. So the whole item, including display lines, should be read and construed together, and its meaning and signification thus determined. When thus read, if its meaning is so unambiguous as to reasonably bear but one interpretation, it is for the judge to say whether that signification is defamatory or not. If, upon the other hand, it is capable of two meanings, one of which would be libelous and actionable and the other not, it is for the jury to say, under all the circumstances surrounding its publication, including extraneous facts admissible in evidence, which of the two meanings would be attributed to it by those to whom it is addressed or by whom it may be read." See *Peck* v. *Tribune Company*, 214 U. S. 185, 190.

Counsel for respondent admit (and properly so) that, upon the authorities, a published item saying "C shot and killed G," without more, would not be libelous *per se*— it does not set forth the commission of a crime in unambiguous words. And we are unable to conclude that, as matter of law, addition of the words "while the latter was abusing his wife, who had taken refuge at Merry Mills, Chaloner's home" would convert such a statement into a definite charge of murder. On the contrary they might at least suggest to reasonable minds that the homicide was

without malice. Considering the wide circulation of present day newspapers and their power for doing injury to reputation, it is highly important that the ancient doctrine "Whatever a man publishes he publishes at his peril" should be strictly enforced. But this cannot be done properly by taking away from the jury doubtful questions of fact.

We find no reason to disagree with the conclusion reached by the Court of Appeals in respect of the other errors there assigned.

A writing entitled "Answer to Petition for Writ of Certiorari and Discussion of Matters of Fact in Brief for Petitioner" signed "John Armstrong Chaloner, *Pro Se*," and filed here April 21, 1919, contains much irrelevant and scandalous matter and is unfit for our files. It must be stricken from them.

The judgment below must be reversed and the cause remanded to the Supreme Court with instructions to grant a new trial.

*Reversed.*

MR. JUSTICE CLARKE took no part in the consideration or decision of this cause.