## SWEENEY v. UNITED FEATURE SYNDICATE, Inc.

No. 159.

Circuit Court of Appeals, Second Circuit.

Aug. 3, 1942.

See, also, D.C., 29 F.Supp. 419, 420.

John J. O'Connor, of New York City (William F. Cusick, of Washington, D. C., and Joseph D. Schenck, of New York City, of counsel), for plaintiff-appellant.

DeWitt, Van Aken & Nast, of New York City (MacDonald DeWitt and Harry H. Van Aken, both of New York City, of counsel), for defendant-appellee.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The plaintiff, an attorney and a member of the Congress of the United States from the State of Ohio, brought this suit in the District Court for the Southern District of New York against United Feature Syndicate, Inc., a New York corporation to recover for an alleged libel. Jurisdiction grounded upon diversity was duly alleged and is unquestioned. The suit was tried to a jury which returned a verdict for the defendant on which the judgment was entered from which the plaintiff has appealed.

Although the plaintiff took no formal exception to such refusal, he now seeks to predicate error upon the refusal to charge plaintiff's request No. 12, which was as follows: "I charge you that the article complained of in the complaint is libelous per se and if the jury believe from the evidence that such article was published as charged, then damages shall be presumed and in assessing or fixing such damages the jury may consider the extent of the publication as shown by the evidence, the wealth of the defendant, the standing and reputation of the plaintiff, and plaintiff's mental suffering, if any, that you believe would naturally arise from the nature of the charges in the article complained of herein."

The defendant has taken the position that the denial to charge this request is not properly before the court because the record on appeal does not show any exception taken as required by Rule No. 51, Federal Rules of Civil Procedure 28 U.S.C.A. following section 723c and by Rule No. 9 of this court. To correct this defect, the plaintiff has moved to amend the record to show such an exception and has shown in supporting affidavits that the trial judge and opposing counsel were fully aware of his contention since memoranda were submitted upon the point. Furthermore he asserts that after the jury had retired to consider the case counsel for both parties gathered around the reporter to have their formal exceptions noted including an exception by the plaintiff to charge his request No. 12.

 It is unnecessary to pass upon the motion to amend the record since we may consider the refusal to charge as requested in these circumstances even though no formal exception appears in the record. Cf. National Fire Ins. Co. v. School Dist. No. 68, 10 Cir., 115 F.2d 232, 234. The

906

purpose of exceptions is to inform the trial judge of possible errors so that he may have an opportunity to reconsider his rulings and, if necessary, correct them. See Rule 46, F. R. C. P.; 3 Moore's Federal Practice, p. 3090. Here it appears that there was full discussion of the point raised which adequately informed the court as to what the plaintiff contended was the law, and the entry of a formal exception after that would have been a mere technicality. Cf. Stoltz v. United States, 9 Cir., 99 F.2d 283, 284. Those cases construing Rule No. 51, F. R. C. P. strictly all involve situations where no indication was given to the judge that error would be assigned to his ruling.

The complaint, after setting forth the allegedly libelous portions of the article published on or about December 23, 1938 under the title "Washington Daily Merry-Go-Round," asserts the innuendo that it meant and intended "to convey that plaintiff is guilty of racial prejudice against persons of Jewish origin and guilty of conduct unbecoming a public officer and to hold plaintiff in contempt in the eyes of his constituents and clients he represents in a professional capacity."

The entire article is as follows:

"A hot behind-the-scenes fight is raging in Democratic Congressional ranks over the effort of Father Coughlin to prevent the appointment of a Jewish judge in Cleveland.

"The proposed appointee is Emerich Burt Freed, U. S. District Attorney in Cleveland and former law partner of Senator Bulkley, who is on the verge of being elevated to the U. S. District Court.

"This has aroused the violent opposition of Representative Martin L. Sweeney, Democrat of Cleveland, known as the chief Congressional spokesman of Father Coughlin.

"Basis of the Sweeney-Coughlin opposition is the fact that Freed is a Jew, and one not born in the United States. Born in Hungary in 1897, Freed was brought to the United States at the age of 13, was naturalized ten years later.

"Justice Department officials say he has made an excellent record as U. S. Attorney, is able, progressive, and was second on the list of judicial candidates submitted by the executive committee of the Cleveland Bar Association. First on the list was Carl Friebolin, whom Justice Department officials say they would have gladly appointed despite his age of 60, had he not eliminated himself voluntarily for physical reasons.

"Two others on the Bar Association's list, Walter Kinder and Harry Brainard, were eliminated because of big business or reactionary connections. Last on the list was Dan B. Cull, a former Common Pleas Court judge, and an excellent appointment except that he happens to be a Catholic and the last two judicial appointments in Ohio have been Catholics. So the Justice Department returned to the No. 2 man on the list, a Jew.

"Irate, Congressman Sweeney is endeavoring to call a caucus of Ohio Congressmen December 28 to protest against Freed's appointment."

All but the fifth and sixth paragraphs of the article is claimed to be libelous. The two questions presented on appeal are whether the trial court erroneously left to the jury the determination of whether or not this was libelous per se and whether it was error for the judge to refuse to charge that the article was libelous per se. The charge was in part as follows:

"The first thing you will have to do is to determine—and this is the first question I submit to you—whether or not this article is libelous. That is the first thing you must find out, whether it is libelous per se; and I am leaving that question for you to decide. Is this article within the category of what we call libel per se?

"First let me define generally what is libel or defamation. Defamation is the making of a false statement about a man or a woman to his or her discredit. Now, if done in writing or some permanent form it is libel; if it is done by mouth, of course it is slander.

"There is no question but what the article complained of in this action was published, but whether or not the language thereof constitutes a libel on the plaintiff is for you to say.

"The courts have handed down many decisions as to what constitutes libel per se, and there have been many of them, but generally speaking, that which is written about a person is libel per se if it intends to expose him to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons and to deprive him of their friendly intercourse in society. And also where it intends to disgrace him and bring him into ridicule and contempt. That,

generally speaking, is the general definition of libel."

As the denial of the request and the charge as given were both in effect a refusal to direct a plaintiff's verdict on the question of liability and to submit only the question of damages, we shall consider that to be the gist of this appeal and treat the record as raising that broad question for decision now.

The plaintiff has argued that it was error to submit the case thus to the jury since our decision in Sweeney v. Schenectady Union Pub. Co., 2 Cir., 122 F.2d 288, affirmed 316 U.S. 642, 62 S.Ct. 1031, 86 L.Ed. ——, held that a complaint based upon the publication of a similar article was sufficient on demurrer though no special damages were alleged. But the plaintiff misconstrues our decision in that case. There we were dealing only with an appeal from the dismissal of the complaint before trial on the ground that without the allegation of special damages no cause of action had been stated and, of course, assumed that the publication, interpreted as alleged, was false. Here there was no preliminary attack upon the sufficiency of the complaint.

A reading of the entire charge makes it clear that the trial judge used the words "libel per se" in his charge as synonymous with actionable libel found by the jury to have been proved by the evidence. He chose that way to explain the burden of proof resting on the plaintiff and followed what has been above quoted with:

"There are many things which may be said of people which are not true which may not be actionable. Then the point you have to decide is, does this publication come within that category? Or is it subject to an innocent meaning? I am submitting it to you, because you are to say. Does it come within the definitions I have given you, or is it susceptible of another meaning, an innocent meaning? * * *. You see, the plaintiff claims here that the articles accuse him of something which holds him up to ridicule; that it accuses him of anti-Semitism. The defendant's claim is that it does not; that it may be susceptible of another meaning; that he was opposed to him (Freed) as he might have a right to be because he was a Hebrew, and for many reasons a Hebrew or a Jew might not be the proper man at this time for this job.

"I say you are to take all the circumstances in the case into consideration, and if you find that the publication complained of in this action does not contain statements about the plaintiff to his discredit, then it is not a libel, and then the plaintiff has not made out his case."

Though perhaps more artistic language might have been chosen, the plain meaning of these instructions to the jury was that if it was found from the evidence that the article was false and libelous under the definition of "libel per se" as contained in the charge and, as to which as a definition no fault has been found, the plaintiff was entitled to recover unless certain defenses, which are beside the issue on this appeal, were made out.

■ This was all the plaintiff was entitled to for it enabled him to present the facts to the jury for a determination of the issues on the merits in the light of the applicable law. Had the language been capable of only one interpretation and that been certain and the judge had submitted to the jury the legal question of determining whether the article, published as alleged, was libelous per se we agree that it would have been error. But only where the meaning of the published language is plain, is it for the judge to decide as a matter of law whether or not the publication is libelous. Mattice v. Wilcox, 147 N.Y. 624, 42 N.E. 270; Szalay v. New York American, Inc., 254 App.Div. 249, 4 N.Y.S.2d 620.

■ If, however, there was an innocent interpretation of the meaning of the words used in their setting in the territory in which the publication occurred, it was for the jury to say upon all the evidence whether the article was defamatory or not. Such is the settled rule in the courts of New York. Katapodis v. Brooklyn Spectator, 287 N.Y. 17, 38 N.E.2d 112; First Nat. Bank of Waverly v. Winters, 225 N.Y. 47, 121 N.E. 459; Cooper v. Rochester Ice Cream Co., 212 N.Y. 341, 106 N.E. 117; Demos v. New York Evening Journal Pub. Co., 210 N.Y. 13, 103 N.E. 771; Sanderson v. Caldwell, 45 N.Y. 398, 6 Am.Rep. 105. See, also, Washington Post Co. v. Chaloner, 250 U.S. 290, 293, 39 S.Ct. 448, 63 L.Ed. 987; Hubbard v. Associated Press, 4 Cir., 123 F.2d 864, 866; Restatement of Torts, § 614.

■ That there was a possible meaning of the words published which the jury might have found and found not to have been defamatory cannot be doubted. The article does not in so many words charge

908

that the plaintiff was anti-Semitic. It asserts that he opposed the appointment of Freed because he was a Jew and one not born in the United States. Opposition because Freed was a Jew might have been found by the jury to have been based upon political expediency rather than upon racial or religious prejudice against Jews; that he was actuated by a desire to reflect what he thought were the views of most of his constituents; or by a belief that a Jew should not be appointed a judge in that district at that particular time; or by an opinion that a representative of a different group should be appointed because of the importance he attributed to that group; or simply because he wanted some other man appointed and chose to state his opposition to Freed in terms not applicable, perhaps, to the candidate of his choice. Furthermore the publication might have been among people who did not consider it defamatory to be called anti-Semitic anyway. As the record does not contain the evidence, we cannot say that, in the face of these possible interpretations of the opposition of Sweeney to the appointment of Freed, cf. Sweeney v. Caller-Times Pub. Co., D.C., 41 F.Supp. 163, 167, it was error to let the jury decide whether the publication was libelous and as that was the issue actually submitted to the jury we find no reversible error.

Judgment affirmed.