### ESTILL v. HEARST PUBLISHING CO., Inc.

### No. 10272.

United States Court of Appeals
Seventh Circuit.

Jan. 29, 1951.

———◆———

Charles Dean Connor, Harry S. Ditchburne, Chicago, Ill., George Cohan, Gary, Ind., for appellant.

Floyd E. Thompson, Roger W. Barrett, Chicago, Ill., Poppenhusen, Johnston Thompson & Raymond, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and KERNER and LINDLEY, Circuit Judges.

KERNER, Circuit Judge.

This appeal is from an order granting defendant's motion to dismiss and dismissing a complaint in two paragraphs charging libel and invasion of plaintiff's right of privacy.

The offending matter was contained in the first of a series of six feature stories written by Elgar Brown with the foreword on the last five that they were "on the blood-smeared career of the late outlaw, John Dillinger, whose influence on those with whom he came in contact was completely evil. The series was inspired by the recent death, in squalor, of Patricia Cherrington, Dillinger gang 'moll'." The stories were published on successive days from May 8 to May 13, 1949, in the Chicago Herald-American, a newspaper having extensive circulation, according to the complaint, in Lake County, Indiana, where plaintiff, a lawyer, resides and practices his profession.

The first story carried a bold headline, "How Dillinger Curse Pursued Pals to Grave," and the following subcaption:

"(Some people are drawn to the vultures of crime like flies into a web. The lure is tawdry and mean and gaudy with false glamor. It's a fatal attraction.

"Greed or distorted vanity led many to serve John Dillinger in that brutal killer's epic career of outlawry. This series, inspired by the recent squalid death of Dillinger gang moll Patricia Cherrington, shows that the bandit chief's influence was wholly evil and that none escaped the Dillinger curse.)"

This first story was illustrated by three pictures, one of which was of Dillinger and plaintiff, taken in 1934 at a time when Dillinger had been captured in Arizona and brought back to Indiana and lodged in a jail in Crown Point from which he escaped a short time later. It showed Dillinger standing next to plaintiff with one hand on his shoulder, with the caption below: "Victim of the Dillinger curse was Robert Estill, Lake County, Indiana, prosecuting attorney, who foolishly struck a friendly pose with the noted outlaw. The killer's subsequent toy-gun escape from a Hoosier jail spelled the end of Estill's career. He was virtually laughed out of office and public life." The article also contained the following text:

"Posed with Arm About Bandit

"Probably the most innocent of all the victims was Prosecutor Robert Estill of Lake County, Ind.

"Estill felt so expansive when they brought Dillinger to Crown Point for a too-brief sojourn in the county jail that he posed for pictures with an arm about John in an apparently brazen show of friendship and admiration.

"It was literally a fatal mistake. Following Dillinger's epic crashout with a wood-carved gun, Estill lived long enough to be laughed out of office. Then, a broken man, he died."

The picture and its accompanying descriptive matter and the text set forth above are the only reference to plaintiff by name in the entire series. Otherwise the stories pictured the lurid career of Dillinger in crime and the part played by his various associates, and described the bad

end to which, according to the stories, they all came, without exception.

The complaint asserts that the statements relating to plaintiff by name, taken in connection with the statements contained in the entire series, constituted an inference or innuendo that he was a crony, pal, friend and admirer of the outlaw and one of his many associates who participated in his escapades, and that the series classified him as one of a group of the various characters who were criminals or had criminal associations or tendencies, all of whom were intimate pals or cronies of Dillinger and came under the spell of his curse and for that reason to an evil end. Plaintiff denied that he was "laughed out of office" and alleged that he had been actively engaged in political activities and had held public office since "said date" and that he had engaged in the practice of law for 25 years and had enjoyed an excellent reputation among the members of his profession and the citizens of the county and state. He also denied any association with or admiration for the desperado.

Defendant's motion on which the dismissal was predicated stated the following grounds:

1. The facts alleged do not state a cause of action under the general law of libel or under the law of Indiana.

2. The publication complained of is not actionable because it does not impeach the honesty, integrity, virtue or reputation of the plaintiff.

3. Defendant has complied with the Indiana Retraction Statute, and therefore according to the express provisions of the statute, plaintiff can recover only actual damages. Since the complaint contains no allegations of actual damages, it does not state a cause of action.

4. The complaint does not state a cause of action because statements of opinion are not actionable.

5. The complaint does not state a cause of action because no facts are alleged showing special damages. No facts are set forth showing financial injury to plaintiff.

6. The complaint does not state a cause of action because no facts are alleged showing actual malice or ill will on the part of the defendant.

7. The words referring to plaintiff's apparent show of friendship for Dillinger, to plaintiff's being laughed out of office, and to plaintiff as a broken man are fair comment on and criticism of a matter of public interest and therefore not actionable.

8. Count II does not state a cause of action for invasion of plaintiff's right of privacy because no right of plaintiff was violated, and because the complaint shows that plaintiff voluntarily posed for the photograph complained of and thereby waived any such right; that plaintiff was a public person; that the publication was within the privilege of the press; and that no privacy of the plaintiff was invaded by this defendant.

Of course, if any of the first seven grounds and the eighth are good, then the complaint was properly dismissed even though the court did not indicate on which of them it based its action. The question presented is whether any of them is sufficient as a matter of law to warrant the dismissal of the cause without hearing.

 In this court defendant asserts first that the complaint does not affirmatively show that plaintiff has complied with the Indiana statute concerning actions for libel in newspapers and therefore the complaint was properly dismissed. It refers to § 2–1043, Burns' Ann.Stat., which provides: "Before any suit shall be brought for the publication of a libel in any newspaper in this state, the aggrieved parties shall, at least three (3) days before filing the complaint in such suit, serve notice in writing on the publisher * * * of such newspaper, * * * specifying the statements in said article which he or they allege to be false and defamatory. If it shall appear upon trial of said action that said article was published in good faith, that its falsity was due to mistake or misapprehension of the facts, and that a full and fair retraction of any statement therein alleged to be erroneous was published in a regular issue of such newspaper, within three (3) days * * * after such mistake or misapprehension was brought to the knowledge

of such publisher * * * then the plaintiff in such case shall recover only actual damage * * *."

However, as plaintiff points out, this section is a part of Title 2 on Civil Procedure and contemplates limitation of damages to those actually suffered by a plaintiff, provided the various conditions are met by the defendant upon trial. We agree with plaintiff that it was not intended to establish a condition precedent to his substantive right of action. And defendant's reliance on its compliance with the Indiana Retraction Act as a ground for dismissal is obviously untenable. While retraction may be proved in mitigation, White v. Sun Publishing Co., 164 Ind. 426, 73 N.E. 890, it is matter for affirmative defense, hence is not ground for dismissal of the action.

We agree with defendant that this case is controlled by Indiana law. Mattox v. News Syndicate Co., 2 Cir., 176 F.2d 897 12 A.L.R.2d 988. However, apart from the matter of the statute referred to above, we find nothing in the Indiana cases to indicate the adoption of any different rule of law than the general one, that matter is actionable *per se* if it subjects the plaintiff to public ridicule, hatred or contempt—if it tends to injure his reputation or throw contumely or reflect shame and disgrace upon him. See Crocker v. Hadley, 102 Ind. 416, 1 N.E. 734; Doan v. Kelley, 121 Ind. 413, 23 N.E. 266; Prosser v. Callis, 117 Ind. 105, 19 N.E. 735. And in considering whether or not the offending matter is libelous *per se*, it must be considered in its entirety, including the headlines accompanying it and the place and position of the item. 33 Am.Jur. on Libel and Slander, §§ 45 and 87. The matter must be construed in the sense which readers of common and reasonable understanding would ascribe to it, and where language is unambiguous and capable of only one meaning, it presents a question of law to be determined by the court as to whether or not it is libelous *per se*. Brewer v. Hearst Publishing Co., 7 Cir., 185 F.2d 846. However, where the language used is capable of two meanings, one libelous and the other not, then the question of the meaning to be ascribed to it must be submitted to the jury. Washington Post Co. v. Chaloner, 250 U.S. 290, 39 S.Ct. 448, 63 L.Ed. 987; Spanel v. Pegler, 7 Cir., 160 F.2d 619, 171 A.L.R. 699. It is only when the court can say that the words are not reasonably capable of any defamatory meaning and cannot reasonably be understood in any defamatory sense that the court can rule as a matter of law that they are not defamatory. Baker v. Warner, 231 U.S. 588, 34 S.Ct. 175, 58 L.Ed. 384.

Considering the alleged libelous matter in the light of these general principles, we think it cannot be said as a matter of law that the words were not susceptible of a defamatory meaning, hence we cannot agree with defendant's contention that the complaint was subject to dismissal because the publication was not libelous *per se*. And of course allegations of special damage or actual malice are not essential where the matter alleged to defame is libelous *per se*.

Defendant contends here, as in the District Court, that the publication was not actionable because it was fair comment and criticism on a matter of public interest, referring, among other authorities, to the Restatement of Torts, Vol. III, § 606. We find the privilege described there as "an expression of the opinion of the commentator or critic on the facts commented upon or criticized. * * * the facts upon which the criticism is based must either be true or, if untrue, the critic must be privileged to state them."

It may be that the death of one of the so-called "pals" of Dillinger some fifteen years after his spectacular death was a matter of sufficient public interest to warrant reviving the sordid story of his escapades. Even so, the privilege of fair comment and criticism would be available only as to the verified facts of such story, and could not be extended to cover misstatements of fact related therein. Here a question was presented for the jury as to whether the context was to be construed to mean that plaintiff was an associate of a notorious outlaw, one of those led by greed or vanity to serve that outlaw and, for that reason, pursued by the "strange curse"

which doomed all his associates. It was in that context that the story went on to say directly of plaintiff that he lived long enough after Dillinger's escape from the Indiana jail to be laughed out of office and then, "a broken man, he died." Ordinarily it is not actionable *per se* to misstate the fact of a person's death. However, here defendant not only falsely stated that plaintiff had died, but purported to state the circumstances under which he died, "a broken man." By his complaint plaintiff alleged that this was injurious to him personally and in his professional capacity as an attorney, and had done great damage to his earning capacity as such attorney. We cannot agree that he stated no cause of action.

We conclude that none of the seven grounds asserted by defendant for dismissal of the complaint for libel justified the dismissal of that cause of action.

The second paragraph of plaintiff's complaint alleged the unwarranted invasion of his right of privacy by the same publication. He asserts that the stories complained of did not constitute news but rather "purported to be historical in nature

of an event which occurred in the spring of 1934 * * *" By "the event" we assume that he refers to the taking of the photograph which furnished the basis for bringing plaintiff into the series of feature stories. Regardless of the circumstances under which the picture was taken and whether or not the pose was wholly inadvertent, as plaintiff alleges in his complaint, he was at that time a public official and, as such, whether inadvertently or not, he became one of the figures in a story of considerable public interest at that time. That being the case, we think it cannot be said that the republication of that story constitutes any invasion of his private rights. It is the unwarranted publicizing of a person's *private* affairs and activities which furnishes the basis for the cause of action. We think the matter here alleged to offend does not fall within that category. We therefore find no error in the dismissal of the second paragraph of the complaint.

The judgment appealed from is reversed as to the first paragraph of the complaint and affirmed as to the second paragraph, and the cause is remanded for further proceedings.