[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON MOTION FOR SUMMARY JUDGMENT
This is an action for libel against the Managing Editor and the Publisher of the Evening Sentinel, a daily newspaper of general circulation published in Ansonia. The plaintiff is the mother of David J. Weinberg. An article in the newspaper following the conviction of David Weinberg for murder in the Superior Court at Waterbury referred to him as "a bastard." The defendants claim that when the statement made in the newspaper article is considered in context that it is protected speech as a matter of law under both the federal and Connecticut Constitutions, and they have filed a motion for summary judgment on that basis.
A summary judgment may be granted under section 384 of the Connecticut Practice Book, if the pleadings, affidavits and other proof submitted with the motion show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Connelly v. Housing Authority, 213 Conn. 354, 364; Bartha v. Waterbury House Wrecking Co., 190 Conn. 8, 11. To prove that there is no genuine issue as to any material fact the moving party must make a showing that it is quite clear what the truth is, and that it excludes any real doubt as to the existence of any material fact. D.H.R. Construction Co. v. Donnelly,180 Conn. 430, 434; Fogarty v. Rashaw, 193 Conn. 442, 445. A material fact has been defined as a fact that will make a difference in the result of the case. Hammer v. Lumberman's Mutual Casualty Co., 214 Conn. 573, 578; Booth v. Flanagan,23 Conn. App. 579, 584. A genuine issue has been described as either a triable, substantial or real issue of fact and one which can be maintained by substantial evidence. Craftsmen, Inc. v. Young, 18 Conn. App. 463, 465; United Oil Co. v. Urban Redevelopment Commission, 158 Conn. 364, 378. In determining whether there is a material issue of fact, the evidence is considered in the light most favorable to the nonmoving party. Connell v. Colwell, 214 Conn. 242, 246, 247. Once the moving party has presented evidence in support of the motion for summary judgment, the opposing party must present evidence that demonstrates the existence of some disputed factual issue. State v. Goggins, 208 Conn. 608, 616; Bartha v. Waterbury House Wrecking Co., supra, 11, 12. The party opposing the motion must raise evidentiary facts or substantial evidence outside the pleadings from which the material facts alleged in the pleadings can warrantably be inferred. Na-Mor Inc. v. Roballey, 24 Conn. App. 215, 217, quoting United Oil Co. v. Urban Redevelopment Commission,158 Conn. 364, 378-79.
The plaintiff did not file a counter affidavit or any CT Page 5464 documents in opposition to the motion for summary judgment and concedes in the brief in opposition to the motion that the material facts are not disputed. There is no genuine issue as to any material fact, the next question is whether the moving party is entitled to judgment as a matter of law. Bartha v. Waterbury House Wrecking Co., supra, 11. That is resolved by applying to the established facts the same test as is used in determining whether a party would be entitled to a directed verdict on the same facts. Connelly v. Housing Authority, supra, 364; Connell v. Colwell, supra, 247. The question is whether as a matter of law the statement in the newspaper is actionable libel in Connecticut.
On November 22, 1988 David Weinberg was convicted by a jury in the Waterbury Superior Court of murdering Joyce Stochmal in August of 1984. The case was widely publicized and following the verdict there was extensive coverage in the Evening Sentinel and other newspapers, including articles about the trial and the victim's family. On January 7, 1989 the defendant Pollock published an article discussing statements made to him by an unidentified friend of the Stochmal family. The complete article was attached to the revised complaint as Exhibit A, a copy of which is attached to this opinion. The conversation related in the article consists primarily of direct quotes from the person who called Pollock. The initial statement is that the victim's family was upset because of the conduct of John Williams, the attorney for David Weinberg at the trial. After some discussion of the trial itself there are statements made about Weinberg's prior criminal record and the effect of the death and the trial upon the victim's family. Near the end of the article are the following statements:
 "They lost a daughter. They lost her to a bastard who was trying to rape her. What should they feel toward him, compassion?
 He is where he should have been ever since he was arrested.
He was allowed to walk the streets for far too long.
 But while the case is over — if the appeal doesn't turn things all around — the Stochmals will never get their daughter back.
 She and her family are the ones people should be concerned about; not Weinberg.
Mercy? Sympathy? Did he show either to CT Page 5465 Joyce?"
The complaint alleges that the word "bastard" in that statement was a false and malicious claim that the plaintiff, the mother of David Weinberg, was not chaste at the time of her marriage and that the statement was defamatory as a matter of law. The defendants claim that the word in the context in which it was used is a nonactionable epithet or rhetorical hyperbole. The article never mentions the plaintiff by name, but from the publicity surrounding the trial there was at least some public knowledge that the plaintiff was the mother of David Weinberg, and it was clear from the article that the reference to "bastard" referred to David Weinberg. An affidavit from Pollock states that the word "bastard" in the context of the article was intended and understood by him as expressing an unfavorable opinion of the character and conduct of David Weinberg and that it had nothing to do with the circumstances of his conception or birth or the chastity of the plaintiff.
Libel has been defined in Connecticut as "a false and malicious publication of a person which exposes him to public ridicule, hatred or contempt or hinders virtuous men from associating with him." Terry v. Hubbell, 22 Conn. Sup. 248,255, quoting Donaghue v. Gaffy, 54 Conn. 257, 268. When a libel is expressed in clear and unambiguous terms, the question whether it is libelous per se is one of law for the court. Proto v. Bridgeport Herald Corporation, 136 Conn. 557,565; Charles Parker Co. v. Silver City Crystal Co., 142 Conn. 605,612. Also, if the alleged defamatory words could not reasonably be considered defamatory in any sense, the matter becomes an issue of law for the court. Id., 612. Burns v. Telegram Publishing Co., 89 Conn. 549, 552. "Whether a published article is libelous per se must be determined upon the face of the article itself. The statements contained therein, taking them in the sense in which common and reasonable minds would understand them, are determinative and may not for this purpose be varied or enlarged by innuendo." Proto v. Bridgeport Herald Corporation, supra, 565.
It has long been the law in this state that it is libelous per se to accuse a woman of being unchaste. Frisbie v. Fowler, 2 Conn. 707 (1818); Kennenberg v. Neff, 74 Conn. 62,63 (1901); DeSanto v. DeNicola, 99 Conn. 717, 718 (1923). While no Connecticut decisions have been found which hold that it is defamatory to assert that a woman is the mother of a bastard, because it is a an assertion of unchastity, the plaintiff's brief cites several cases from other jurisdictions from the late 1800's and early 1900's which reach that conclusion. Arguably the law may have changed in CT Page 5466 the intervening years as a result of changes in social customs, beliefs and moral values, but it is unnecessary to decide that point, and for purposes of this motion, it is presumed that accusing a woman as being the mother of a bastard is libelous when the statement is untrue.
The defendants argue that the statement made, even if it is conceded that by innuendo it refers to the plaintiff, must be considered in the context in which it was made. Both Connecticut and federal cases support this position. Goodrich v. Waterbury Republican-American, Inc., 188 Conn. 107,120, 121, states that he allegedly libelous remarks must be considered in their totality and in the context in which they were published. In Brown v. K. N. D. Corporation, 205 Conn. 8, 15n, the court indicated that the challenged statement should be considered in the context in which it was said so that "publication must be read and construed in the sense in which the readers to whom it is addressed would ordinarily understand it." quoting Washington Post Co. v. Chaloner, 250 U.S. 290, 293 (1919). Earlier Connecticut cases recognized that when statements were made concerning private citizens that the statements must be taken in the sense that common and reasonable minds would understand them to determine whether the statements are libelous per se and that they cannot be varied or enlarged by innuendo. Proto v. Bridgeport Herald Corporation, supra, 565. In Ventresca v. Kissner,105 Conn. 533, 535 (where the statements included ones to the effect that the plaintiff "is a bad woman" and "runs around with her boarders.") the quoted remarks taken in the sense in which common and reasonable minds would understand them could be construed as a charge of breach of chastity against the plaintiff which was slanderous per se. Id, 536. On the other hand, "defamatory language may be connected with other language in a way which explains its use is not defamatory. It may be so attached to a subject or an event, as that it does not have the meaning which the words ordinarily import." Yakavicze v. Valentukevicious, 84 Conn. 350,353 (indicating that claims that persons were robbers, cheaters and villains were not libelous in the context in which they were used because they charged swindling or trickery rather than larceny, and it did not assert that the plaintiff and others were guilty of a crime.).
See also Restatement, Second Torts, section 563: "The meaning of a communication is that which the recipient correctly, or mistakenly but reasonably, understands that it was intended to express."
In Goodrich v. Waterbury Republican-American, Inc., supra, 122, it is noted that statements which were made not CT Page 5467 as facts, but as colloquial and figurative expressions used to embellish facts disclosed in newspaper articles were not actionable. The opinion relied upon the decision of the United States Supreme Court in Greenbelt Cooperative Publishing Ass'n, Inc. v. Bresler, 398 U.S. 6, 14 (1970) which held that the word "blackmail" was nondefamatory where "even the most careless reader must have perceived that the word was no more than rhetorical hyperbole, a vigorous epithet." The defendants' brief cites numerous other decisions from other state and federal courts which recognize the same concept.
The dictionary definition of "bastard" has acquired several meanings in modern times. The American Heritage Dictionary, Second College Edition gives the following three definitions: (1) an illegitimate child; (2) something of irregular, inferior or dubious origin, and (3) a mean or disagreeable person. When the newspaper article here is reviewed in its entirety and the word "bastard" is read in context, no reasonable person would conclude that it was used in a context other than the third definition. David Weinberg had been sentenced for murder on January 6, 1989 after a well publicized trial, and the article appeared the next day, January 7, 1989. Considered in the context of the article and the time and circumstances surrounding its publication, calling David Weinberg "a bastard" was no different than calling him "a son-of-a-bitch," or similar uncomplimentary term implying that he was a bad and evil person. Such phrases or expressions are considered colloquial or strong words spoken in anger and matters of opinion which are not to be taken literally. As stated in Restatement, second, Torts, section 566, comment e:
 "There are some statements that are in form statements of opinion, or even of fact, which cannot reasonably be understood to be meant literally and seriously and are obviously mere vituperation and abuse. A certain amount of vulgar name calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listerners to amount to nothing more. This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult. Thus when, in the course of an altercation, the defendant loudly and angily calls the plaintiff a bastard in the presence of others, he is ordinarily not reasonably understood to be asserting the fact that the plaintiff is of illegitimate CT Page 5468 birth but only to be abusing him to his face. No action for defamation will lie in this case." (emphasis added).
The plaintiff has not produced any evidence, in the form of a counteraffidavit or any document to suggest that any reasonable person would give "bastard" a literal interpretation in the context it was used in here.
It is also apparent after the recent United States Supreme Court decision in Milkovich v. Lorain Journal Co., 497 U.S. ___ 110, S.Ct. 2695, 2705, 2706 (1990) that epithets and rhetorical hyperbole remain nonactionable, protected speech under the First Amendment of the U.S. Constitution. See also Greenbelt Cooperative Publishing Ass'n, Inc. Bresler, supra; Hustler Magazine, Inc. v. Falwell, 485 U.S. 46, 50 (1988); Letter Carriers v. Austin,418 U.S. 264, 284-286 (1974). As stated in Milkovich,110 S.Ct. at 2706: "The Bresler-Letter Carriers-Falwell line of cases provide protection for statements that cannot `reasonably be interpreted as stating actual facts' about an individual. Falwell, 485 U.S. at 50, 108 S.Ct. at 879. This provides assurance that public debate will not suffer for lack of `imaginative expression' or the `rhetorical hyperbole' which has traditionally added much to the discourse of our Nation."
In addition to protection under the First Amendment of the United States Constitution ("Congress shall make no law. . . abridging the freedom of speech or of the press. . .") the statement here is protected under Article 1, Section 4 of the Connecticut Constitution: "Every citizen may freely speak, write and publish his sentiments on all subjects, being responsible for the abuse of that liberty." The defendants argue that the Connecticut Constitution provides greater protection than the First Amendment on the issue involved in this case. State courts may construe state constitutional provisions to allow a greater freedom of expression than guarantees under the United States Constitution and federal law. Cologne v. Westfarms Associates, 192 Conn. 48, 57, 58. The New York Court of Appeals in Immuno Ag v. Moore-Jankowski, 77 N.Y.2d 235,567 N.E.2d 1270, 1277, 1278 (1991) construed a provision in the New York Constitution to provide greater protections than the minimum guarantees of the U.S. Constitution.[1] Although the courts of this state can look to the constitutions of other states in order to interpret the Connecticut Constitution, reliance on other state constitutional precedent is not a substitute for independent analysis of our own constitutional language, history, tradition and policy. State v. Perez, 218 Conn. 714, CT Page 5469 724. That task is more appropriate for our Supreme Court and will not be undertaken here because of the prior conclusion based on state law and federal constitutional law that the statement in question here is not actionable. Moreover, while Cologne v. Westfarms Associates, supra, involved a somewhat different issue, the court failed to construe Article 1, Section 4 as providing greater rights than the First Amendment.
The motion for summary judgment is granted.
ROBERT A. FULLER, JUDGE.
[EDITORS' NOTE: EXHIBIT `A' IS ELECTRONICALLY NON-TRANSFERRABLE.]